283 N.J. Super. 411 (1995)
662 A.2d 562
ANTOINETTE MORRONE, PLAINTIFF-RESPONDENT,
v.
HARLEYSVILLE MUTUAL INSURANCE CO., DEFENDANT-APPELLANT, AND AMERICAN INTERNATIONAL ADJUSTMENT COMPANY; CIGNA INSURANCE COMPANY; FAIRFIELD MAINTENANCE COMPANY; DELLA BUONO CONSTRUCTION CO.; ANTHONY DELLA BUONO; JOSEPH DELLA BUONO; GULF OIL CORP. D/B/A CHEVRON USA; AVALON CONDOMINIUM ASSOCIATES; EILEEN HALLEY; AND JIM NATOLI AND VAHAKAN DOVLETIAN D/B/A HACKENSACK CHEVRON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1995.
Decided May 22, 1995.
*413 Before PRESSLER, CONLEY and NEWMAN, JJ.
Anthony J. Zarillo, Jr. argued the cause for appellant (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; James S. Rothschild, Jr., of counsel; Gloria L. Buxbaum, on the brief).
Geoffrey Johnson argued the cause for respondent (Lewis & McKenna, attorneys; Mr. Johnson, of counsel and on the brief; David B. Beal, on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Defendant insurer (Harleysville) appeals a summary judgment entered on November 4, 1994 in plaintiff insured's declaratory judgment action directing Harleysville to provide plaintiff a defense under Garage Policy insurance contracts. We affirm, but in doing so we note that Harleysville's obligations, within the context *414 of the allegations in the underlying litigation, are limited to damages arising from groundwater contamination. Because the underlying litigation alleges such contamination during the terms of the policies, Harleysville must provide a defense, subject to appropriate apportionment and reimbursement.[1]See State v. Signo Trading Intern., Inc., 130 N.J. 51, 66, 612 A.2d 932 (1992); SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 215, 607 A.2d 1266 (1992).
From July 31, 1981 to July 31, 1986, Harleysville provided plaintiff with "Garage Policy Insurance" under five separate one year policies. The policies were "occurrence" as opposed to "claims-made" policies and provided coverage for, pertinent hereto, "property damage to which this insurance applies caused by an accident and resulting from garage operations" ... "occurring during the policy period." The policies, however, contained an "owned property" exclusion.
Plaintiff sold the property in 1986. The underlying complaints that triggered the declaratory judgment action were brought against plaintiff by subsequent purchasers. The remaining complaint alleges that during a period of time encompassing the policy periods at issue there were gasoline leaks on the property causing both soil contamination and groundwater contamination and ultimately resulting in damage to the subsequent owners.
Harleysville asserts that it does not owe its insured a duty to defend because the alleged injuries to the subsequent owners did not occur until after the policy periods. Relying upon Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 483 A.2d 402 (1984), Harleysville contends that the time of the assertion of the damage, i.e., sometime after the sale of the property to the underlying plaintiffs, is the "occurrence" triggering *415 coverage. Since that "occurrence" was after its policies had expired, Harleysville contends that it has no obligation to provide a defense or to indemnify plaintiffs.
In Hartford, Judge Skillman, then a trial judge, had held that the insurer in that bodily injury case did not have a duty to defend its insured under an occurrence policy where the asserted bodily injury became manifest eleven days after the policy's expiration. In so concluding, Judge Skillman noted as "a general rule" that the time of the occurrence of an accident is "not the time the wrongful act was committed but the time when the complaining party was actually damaged." 98 N.J. at 27, 483 A.2d 402. That view was affirmed by us and the Supreme Court, with the latter adopting and quoting Judge Skillman's unreported opinion. Hartford, however, concerned coverage for bodily injury caused by the ingestion of a prescription drug and "expressly declined to resolve the time of an occurrence in the case of progressive bodily injury [or progressive property damage]." Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 453, 650 A.2d 974 (1994).
The Supreme Court has recently addressed that issue and rejected what Hartford referred to as the "general rule" in the context of occurrence liability policies in environmental exposure litigation. Owens-Illinois, Inc. v. United Ins. Co., supra, 138 N.J. at 454-56, 650 A.2d 974. In Owens, the Court determined which trigger theory should apply to bodily injury and property damage resulting from exposure to asbestos. As to the claims respecting property damage, the Court observed that "asbestos products cause continuous property damage from installation until removal" and held that "claims of asbestos-related property damage from installation through discovery or remediation (the injurious process) trigger the policies on the risk throughout that period." 138 N.J. at 455-56, 650 A.2d 974. Referring to the applicability of the "continuous trigger" approach to toxic waste cases in general, the Court said:
Property-damage cases are analogous to the contraction of disease from exposure to toxic substances like asbestos. Like a person exposed to toxic elements, the environment does not necessarily display the harmful effects until long after the *416 initial exposure. "Thus, while property damage is not, of course, an insidious disease, many of the same considerations apply."
[138 N.J. at 455, 650 A.2d 974, quoting Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co., 613 F. Supp. 1549, 1561 (D.N.J. 1985)].
And see Gottlieb v. Newark Ins. Co., 238 N.J. Super. 531, 535-537, 570 A.2d 443 (App.Div. 1990). See also Continental Ins. Companies v. Northeastern Pharm. & Chem Co., Inc., 811 F.2d 1180, 1189 (8th Cir.1987), aff'd, 842 F.2d 977 (8th Cir.1988), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988), ("We ... adopt the majority view that environmental damage occurs at the moment that hazardous wastes are improperly released into the environment and that a liability policy in effect at the time this damage is caused provides coverage...."). Accord, Ray Indus., Inc. v. Liberty Mut. Ins. Co., 974 F.2d 754, 766 (6th Cir.1992); Port of Portland v. Water Quality Ins. Syndicate, 796 F.2d 1188, 1194 (9th Cir.1986); Trustees of Tufts University v. Commercial Union Insurance Company, 415 Mass. 844, 858, 616 N.E.2d 68, 74 (1993); Buckeye Union Ins. Co. v. Liberty Solv. & Chemicals Co., Inc., 17 Ohio App.3d 127, 132, 477 N.E.2d 1227, 1233 (Ohio App. 1984); Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 886, 784 P.2d 507, 515 (Wash. 1990). And see generally, Martin J. McMahon, Annotation, Event Triggering Liability Insurance Coverage as Occurring Within Period of Time Covered by Liability Insurance Policy Where Injury or Damage is Delayed, 14 A.L.R.5th 695, § 26(a), at 887-897 (1993) (toxic waste cases).
We thus reject Harleysville's contention that the property damage within the meaning of the policy did not arise until the occurrence of the alleged injury to the plaintiffs in the underlying litigation. That litigation alleges exposure of gasoline to the insured's property during the terms of the policies. That is sufficient to trigger potential coverage and, thus, the duty to defend, unless some exclusion applies.
Harleysville relies upon an exclusion for "owned property" damage. The particular exclusion here, typical of "owned property" exclusions, provides that coverage afforded under the policy does not apply to "property damage to property owned ... by the *417 insured...." See State v. Signo Trading Intern., Inc., supra, 130 N.J. at 63, 612 A.2d 932 (warehouse owner's general liability policy did not cover costs of cleanup of hazardous materials performed by or on behalf of an insured on its own property when costs were incurred to alleviate damage to insured's property and not to property of third party; policy's definition of property damage did not encompass threat of harm to third party's property even if threat was imminent or immediate).
Plaintiff contends that since the underlying litigation was brought at a time when she no longer owned the property, the exclusion cannot apply, particularly since the policies did not contain alienation clauses. She relies upon Hatco Corp. v. W.R. Grace & Co.-Conn., 801 F. Supp. 1334, 1359 (D.N.J. 1992) which so held. We disagree. See Wickner v. American Reliance Ins. Co., 273 N.J. Super. 560, 642 A.2d 1046 (App.Div.), certif. granted, 139 N.J. 183, 652 A.2d 172 (1994). To be sure, Wickner was not an environmental exposure case and concerned a different exclusionary clause.[2] But we think these differences are without distinction. We there rejected the claim that without an alienation provision the exclusion could not survive a sale and further rejected Hatco in support thereof. We see no reason to disagree with or revisit our rejections. We simply add that plaintiff cannot have it both ways. She cannot claim that the damage was triggered during the terms of the policies and yet avoid the corresponding exclusion simply because a claim for damages arising therefrom was not made until after she was able to sell the property.
That does not, however, resolve the issue of Harleysville's duty to defend. The underlying litigation alleges not only damage arising from contamination to the soil, but also from contamination to the groundwater lying beneath the plaintiff's *418 property. Harleysville would have a duty to defend, if the groundwater does not fall within the "owned property" exclusion.[3]See Hartford Ins. Group v. Marson Constr. Corp., 186 N.J. Super. 253, 257, 452 A.2d 473 (App.Div. 1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983) ("[t]he insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obligated to pay."). And see Voorhees v. Preferred Mutual Insurance Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992).
As to this issue, we recognize the two conflicting trial court decisions. In Reliance Ins. Co. v. Armstrong World Indus., 265 N.J. Super. 148, 625 A.2d 601 (Law Div. 1993), appeal pending, Judge Kleiner rejected the insured's argument that the State's parens patriae interest in groundwater is a sufficient interest in property so as to constitute damage to a third party for purposes of the owned property exclusion. Although the insured pointed to a New York decision which supported its argument, State v. New *419 York Central Mut. Fire Ins. Co., 147 A.D.2d 77, 542 N.Y.S.2d 402 (1989), the court observed that the case cited involved a New York statute which, with respect to groundwater, created a trustee status between the State and its citizens. No analogous New Jersey statute was identified. The Reliance opinion also pointed out that property owners are entitled to bring claims for damages to groundwater, and that a property owner, unlike the State, has an insurable interest as to damages it sustains, which can include those to groundwater. Thus, the court ruled, "[t]he property interest in groundwater is clearly an interest held by the owner of the recorded title of the surface land.... [T]his court is reluctant to create a new theory of insurance indemnification...." 265 N.J. Super. at 162, 164, 625 A.2d 601.
In UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co., 276 N.J. Super. 52, 647 A.2d 182 (Law Div. 1994), on the other hand, Judge Fuentes rejected this conclusion. In doing so he recognized substantial authority from other jurisdictions to the effect that groundwater is not subject to the owned property exclusion, 276 N.J. Super. at 59, 647 A.2d 182, and observed that one New Jersey court has held that landowners enjoy only a beneficial use of groundwater, not a proprietary interest. See Woodsum v. Pemberton Twp., 172 N.J. Super. 489, 412 A.2d 1064 (Law Div. 1980), aff'd, 177 N.J. Super. 639, 427 A.2d 615 (App.Div. 1981). He also noted that groundwater is "by its very nature ... a migratory fluid which uncontrollably seeps through porous soil particles.... [I]t would be unreasonable simplistically to assign ownership rights strictly on the basis of water that may only momentarily be coursing and flowing below a property's surface," 276 N.J. Super. at 61, 647 A.2d 182, and cited provisions of the Water Pollution Control Act that he concluded impose trustee status on the State with respect to groundwater.
These cases raise potentially far-ranging concepts of ownership of groundwater beneath a person's land. They are each wellreasoned; one is not clearly more cogent than the other. See generally, M. Lathrop, Insurance Coverage for Environmental *420 Claims, § 3.08(1), pp. 3-111 to -113 (1994). See also State v. Signo Trading Intern., Inc., supra, 130 N.J. at 60, 612 A.2d 932, noting our disinclination in Diamond Shamrock Chemicals Co. v. Aetna Casualty & Surety Co., 231 N.J. Super. 1, 15, 554 A.2d 1342 (App.Div. 1989) to determine whether "the State's interest in its air and land might qualify as third-party property damage," and 130 N.J. at 64-65, 612 A.2d 932, noting out-of-state cases finding a state's parens patriae interest in the air and water sufficient to constitute third-party damage but declining to consider the correctness thereof.
We take a more narrow view of the issue, albeit simplistic in its approach. At the least, groundwater is unique. Unlike other property that is normally considered as being within the four corners of one's deed, groundwater not only "flows or trickles or runs or oozes through the land from one place to another ...," Woodsum v. Pemberton Tp., supra, 172 N.J. Super. at 502, 412 A.2d 1064, but, other than being a source of potable water, it is certainly not susceptible to the custody or control of a property owner. To this extent, we agree with the description in UMC that it is "by its very nature, ... a migratory fluid which uncontrollably seeps through porous soil particles ... [which] is nearly impossible to naturally contain...." UMC/Stamford v. Alliance Underwriters, supra, 276 N.J. Super. at 61, 647 A.2d 182.
Suffice it to say, groundwater does not clearly fall within the category of "owned property" for the purposes of the exclusion. And it goes without saying that exclusionary clauses are enforceable only if clearly applicable, are narrowly read and any ambiguities are resolved in favor of the insured. E.g. Voorhees v. Preferred Mutual Insurance Co., 128 N.J. 165, 176, 607 A.2d 1255 (1992); Search EDP, Inc. v. American Home Assur., 267 N.J. Super. 537, 542, 632 A.2d 286 (App.Div. 1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994). We are satisfied to resolve the issue of Harleysville's duty to defend claims of damage to the groundwater alleged in the underlying litigation on this narrow basis.
*421 We add one final observation. The underlying litigation alleges both covered and noncovered claims, potentially necessitating apportionment both as to indemnification and defense costs. See State v. Signo Trading Intern., Inc. supra, 130 N.J. at 66, 612 A.2d 932; SL Industries v. American Motorists, supra, 128 N.J. at 214-16, 607 A.2d 1266. The existence of both covered and noncovered claims also presents a potential conflict between the insured and insurer vis-a-vis defense strategy. Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 267 A.2d 7 (1970). Burd and its progeny set forth available methods of handling an insured's defense where conflicts are inherent by virtue of a pleading containing both covered and noncovered claims. Burd, 56 N.J. at 389-90, 267 A.2d 7. See Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., supra, 98 N.J. at 24, 483 A.2d 402 (if conflict renders insurer's control of defense inappropriate, insurer may be required to finance defense subject to a right to reimbursement for costs attributable to noncovered claims); Morton Intern. v. General Acc. Ins. Co. of America, 266 N.J. Super. 300, 340-45, 629 A.2d 895 (App.Div. 1991), aff'd, 134 N.J. 1, 95, 629 A.2d 831 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). Burd makes clear that where the pleadings set forth mutually-exclusive covered and noncovered claims, and without a reservation of rights to which the insured expressly agrees, the insurer cannot "be permitted to control the defense." 56 N.J. at 389, 267 A.2d 7. Rather, under those circumstances, the insurer may be obligated to finance the costs of defense, subject to a right of reimbursement.[4] Whether this or some other technique is appropriate for handling the insured's defense here is a matter *422 that should, in the first instance, be considered by Harleysville and plaintiff. We presume that a satisfactory resolution can be negotiated without judicial intrusion.
Affirmed.
NOTES
[1] There were two underlying lawsuits against plaintiff. The first, Halley v. Avalon Associates, et al., was dismissed. We consider defendant's duty to defend within the context of the allegations set forth in the remaining Bergen County litigation, Avalon Condominium Assc., Inc. v. Avalon Associates, L-10839-92.
[2] The exclusionary clause at issue in Wickner applied to loss "arising out of a premises owned ... by an insured, other than an insured premises." 273 N.J. Super. at 565, 642 A.2d 1046.
[3] Defendant asserts that if there is such potential liability, its duty to defend would be triggered only if the groundwater was actually contaminated during the terms of the policies and that this factual issue will not be resolved in the underlying litigation. Thus it argues that summary judgment in the declaratory judgment action was not appropriate. Rutgers v. Liberty Mut. Ins. Co., 277 N.J. Super. 571, 577-78, 649 A.2d 1362 (App.Div. 1994). See generally Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970). It is unclear from the pleadings that have been submitted to us whether there are other insurers potentially "on the hook." The pleadings indicate that plaintiffs operated the property as a gas station from 1974 to 1986. In any event, given the adoption of the "continuous-trigger" concept by the Supreme Court in Owens, the exposure is continuous and triggers all policies along the way. The asserted factual issue, then, is not material to Harleysville's defense obligations, although it may bear upon an appropriate allocation of liability in the event there are other carriers that have incurred a degree of risk. See Owens-Illinois, Inc. v. United Ins. Co., supra, 138 N.J. at 474-78, 650 A.2d 974.

To be sure, whether a claim is a covered or noncovered claim (for instance, to what extent damages arise from soil contamination or groundwater contamination) are material factual issues. But they will be resolved in the underlying litigation as part of the plaintiffs' damage proofs.
[4] In discussing an insurer's duty to pay only those defense costs "reasonably associated with claims covered under the policy," SL Industries v. American Motorists, supra, 128 N.J. at 215, 607 A.2d 1266, the potential conflict inherent in pleadings containing covered and noncovered claims and the problems thereby generated vis-a-vis the actual handling of a defense, were not mentioned. Those issues, however, were not before the Court because the declaratory judgment action seeking a defense was brought by the insured after the underlying complaint had been settled and defense costs incurred.