293 N.J. Super. 66 (1996)
679 A.2d 701
EUGENE KENTOPP AND DIXIE KENTOPP, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS,
v.
FRANKLIN MUTUAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1996.
Decided July 22, 1996.
*69 Before Judges SHEBELL, STERN and NEWMAN.
John R. Lanza argued the cause for appellants (Thatcher & Lanza, attorneys; Mr. Lanza, of counsel; Franklin G. Whittlesey, on the brief).
Anthony P. Pasquarelli argued the cause for respondent (Methfessel & Werbel, attorneys; Mr. Pasquarelli, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiffs, Eugene Kentopp and Dixie Kentopp, appeal from the entry of summary judgment dismissing their action for a declaratory judgment that defendant, Franklin Mutual Insurance Company (Franklin), having issued a homeowner's policy containing comprehensive general liability (CGL) coverage, was obligated to defend and indemnify them in a third-party lawsuit arising from the discovery of contaminants on their property after it was sold. Plaintiffs assert that: (1) the "owned property" exclusion in the insurance policy did not relieve Franklin from its duty to defend and indemnify them for cleanup costs associated with both soil and groundwater contamination, and, in any event, the absence of an alienated property exclusion in the policy rendered the "owned property" exclusion ambiguous; and (2) the "business risks" exclusion in the policy did not relieve the insurer of its duty to defend and indemnify.
As to those claims related to the groundwater contamination, we hold that the "owned property" exclusion does not preclude coverage for defense and indemnification related to groundwater contamination. See Morrone v. Harleysville Mut. Ins. Co., 283 N.J. Super. 411, 662 A.2d 562 (App.Div. 1995). Regarding the claims related to soil contamination damages, we are constrained by the holding in State, Dep't of Envt'l Protec. v. Signo Trading Int'l, Inc., 130 N.J. 51, 612 A.2d 932 (1992), to conclude that the policy bars coverage for on site soil contamination under the "owned property" exclusion and will not discuss the issue further. *70 We reject plaintiffs' argument that the absence of an alienated property exclusion causes an invalidation of the "owned property" exclusion when the insured property is transferred. Further, the policy includes an exclusion for "locations not insured" that effectively operates as an alienated property exclusion. The issue of whether the "business risks" exclusion in the policy bars the groundwater damage claims cannot be decided on this record because it is not clear whether the groundwater contamination resulted from plaintiffs' personal or business activities.
In July 1992, Anthony D'Altrui and John P.J. Papa, partners, trading as RAAD Associates, a New Jersey partnership (RAAD), filed a complaint in the Law Division ("Altrui suit") against Elizabethtown Gas Company (Elizabethtown), Frank J. Banisch, III, individually and trading as Banisch Associates (referred to collectively as Banisch) and Eugene and Dixie Kentopp, husband and wife, seeking damages for contamination and remediation of property purchased by RAAD from the Kentopps. Elizabethtown allegedly owned a coal gasification operation "contiguous to the site [purchased by RAAD] on the same side of Bush Kill Creek and on the opposite side of Bush Kill Creek" that produced polycyclic aromatic hydrocarbons that contaminated the soil on the property purchased by RAAD from the Kentopps. RAAD also asserted that Banisch, a New Jersey licensed planner and potential investor in the development of the site, negligently failed to alert RAAD to "any potential environmental concern at, in, under or adjoining the Site" prior to RAAD's acquisition of the site.
On September 18, 1992, the Kentopps and RAAD executed a stipulation of dismissal and settlement in the action. By letter dated April 6, 1993, Franklin declined to indemnify or defend the Kentopps. RAAD filed an amended complaint on October 14, 1993, adding Jersey Central Power & Light Company (Jersey Central), as a defendant. The complaint alleged that Jersey Central was the successor to companies who had owned and operated the coal gasification operation on the Flemington site now owned by Elizabethtown. Despite the release, the amended *71 complaint asserted a breach of contract claim against the Kentopps, specifying that they breached their agreement with RAAD to indemnify and hold it harmless from all claims and liability arising from contamination of the property sold to RAAD, and that the Kentopps breached their agreement to immediately remediate the property or advance money to RAAD for that purpose. Banisch and Elizabethtown filed answers and cross-claimed against the Kentopps for contribution and indemnification. On June 24, 1994, the plaintiffs' motion for summary judgment to dismiss the cross-claims for indemnification brought pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.4, was granted, leaving the cross-claims for common law indemnification and contribution pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.11z.
On August 11, 1993, the Kentopps filed this action against Franklin seeking a declaration that it must defend and indemnify plaintiffs against all claims asserted by RAAD, Elizabethtown and Banisch in the D'Altrui lawsuit. Franklin filed an answer with a counterclaim for a declaration that it had no duty either to defend or to indemnify plaintiffs. Both parties moved for summary judgment and on January 6, 1995, summary judgment was granted in favor of Franklin declaring that it had no duty to defend or indemnify plaintiffs.
Plaintiffs had owned the site in Flemington from November 3, 1972, until March 12, 1991, when they sold it to RAAD. The home the Kentopps resided in and a separate garage were located on the property. They operated a transmission repair shop in a portion of the garage until 1983, and rented the garage to various persons who operated automobile repair businesses on the premises. In October 1990 plaintiffs removed an underground storage tank used for oil heating. The removal had been inspected by a DEP inspector who determined that there was no evidence of environmental contamination from the tank.
RAAD demolished the garage and planned on converting the residence to office space. It hired a planning consultant to *72 inventory potential environmental hazards at the site. The consultant could not determine if hazardous substances were spilled at the site and recommended environmental testing by the DEP. A report dated April 1992 by an engineering concern hired by RAAD to conduct soil samplings at the site indicated that hazardous materials were found in the soil. The report noted that "environmentally significant levels of carcinogenic PAH [polyaromatic hydrocarbon] compounds" were found in soil samples collected at the site. It concluded that "a likely source" of the carcinogen PAH was the former coal gasification operations located on adjacent property owned by Elizabethtown. However, the report also suggested that a foundry believed to have been operated on the site of plaintiffs' property over sixty years ago could be a source of "similar wastes by virtue of the operation of high temperature metal working." The report noted that the site was adjacent to the Bushkill Brook and that the brook "displayed a bright green algae color indicating a possible biological loading upstream from the property."
A third environmental report by another engineering firm hired by RAAD, dated September 9, 1994, reported that manufactured gas plant (MGP) wastes, including PAHs, were located in the property's soil. According to this report, the MGP wastes were generated through the operation of two former MGP facilities located within 200 feet of the subject property. The on-site levels of these wastes exceeded "New Jersey non-residential soil cleanup standards for several PAHs and construction debris." Soil testing found no evidence of gasoline or fuel oil. The report concluded that MGP wastes from the off-site gas manufacturing operations were disposed of on the subject property.
On April 19, 1993, DEP and RAAD executed a "Memorandum of Agreement" that provided for remediation of environmental contaminants at the site. The DEP reported in a letter dated July 7, 1993, that remediation was necessary because the on-site soils exceeded the "Direct Contact Soil Cleanup Criteria." DEP found that the site contained fill material polluted by contaminants *73 "commonly associated with the auto repair industry." The letter noted that groundwater quality at the site was not tested, and therefore, DEP reached no conclusion regarding possible groundwater contamination.
Plaintiffs maintained a series of homeowner's insurance policies for the property issued by Franklin from April 2, 1977, through April 2, 1991. The pertinent coverage, exclusion and definition provisions of the policy in effect from April 2, 1990, through April 2, 1991, state:
Section IA Main Liability Coverage
Coverage E. Personal Liability To Others
We will pay for the benefit of insureds, up to our limits of liability, those sums which insureds become legally obligated to pay as damages because of bodily injury or property damage which occurs during the policy term and is caused by an occurrence covered here.
....
Section IIB. Supplemental Coverages
....
2. Damage to Property of Others
Coverage E is extended to include, up to the limit specified here, damage to property of others (that is not insureds or other residents, of an insured premises) caused by an insured, regardless of the insured's legal responsibility. But we do not cover damage:
A. Caused intentionally by an insured older than age 12
B. Arising out of the following:
[*] Business (that of any insured or anyone else)
[*] Locations not insured here.
[*] To property owned by or in the care of your tenants or residents of your household
....
Section IID. Liability Not Insured
....

*74 2. Business and Related Activities
We do not cover bodily injury or property damage arising out of business activities of any insured, rental or holding for rental, wholly or partially, of any premises by any insured.
....
6. Locations Not Insured
We do not cover bodily injury or property damage arising out of any premises which is not an insured premises here. But we do cover bodily injury to a residence employee while performing such duties at other premises.
7. Non-Owned Property
We do not cover property damage to property in the care of, occupied or used by, or rented to, any insured.
8. Owned Property
We do not cover property damage to property owned by any insured.
....
Sections I & II Glossary
....
Insured Premises Part A means one of the following, at the described location, as shown in the Declarations.
1. If the dwelling covered here is a 1 to 4 family house you own:
that house (or the family unit you own if you own 1/2 of a 2 family house) and its related structures and grounds, exclusively used by your household.
....
Occurrence means an accident (including exposure to conditions) which results during the policy term in bodily injury or property damage.
Property Damage means physical damage to, destruction of, or loss of use of tangible property resulting from a covered occurrence.
At argument on the motions for summary judgment, plaintiffs argued that because Banisch and Elizabethtown sought indemnification arising from soil and groundwater contamination on the property plaintiffs sold to RAAD, Franklin was obligated to defend and indemnify plaintiffs from those claims. Plaintiffs maintained that they were not seeking first-party coverage on their own property because a third-party, RAAD, now owns the property. Defendant countered that pursuant to exclusions in the *75 policy for "owned property of the insured" and "business activities," it was not obligated to defend or indemnify plaintiffs.
The trial judge, relying on State v. Signo Trading Int'l, supra, interpreted the policy's "owned property" provision as requiring Franklin to indemnify plaintiffs only for clean-up costs associated with contamination of property owned by third-parties, such as property adjoining the insured property. The judge concluded there was no insurance coverage for the property conveyed to RAAD, as plaintiffs were not entitled to coverage for damage to the insured property when they owned it, and could not gain coverage by virtue of the property's sale to a third party. In addition, the judge found that plaintiffs were not entitled to a defense or to indemnification because the business risks exclusion did not cover contamination arising from plaintiffs' business activities at the property.
The standard of review for determination of a summary judgment motion is whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that ... the moving party is entitled to a judgment as a matter of law." R. 4:46-2. The motion judge must consider whether the available competent evidence, when viewed in the light most favorable to the non-moving party, is sufficient to permit a rational factfinder to resolve the disputed issue in favor of the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Moreover, although the moving papers and pleadings are to be considered in a light most favorable to the party opposing the motion, the opposing party must nevertheless offer facts which are substantial or material in opposing the motion, in order to defeat the grant of summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954).
After these motions were decided, our Supreme Court held that environmental response costs and remediation expenses are covered "damages" within the meaning of a CGL policy. Morton Int'l v. General Acc. Ins. Co. of Am., 134 N.J. 1, 27, 629 *76 A.2d 831 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). Thus, to the extent that the claims against plaintiffs seek damages for costs of DEP-imposed cleanup of the property, as well as for traditional tort-liability money damages, Franklin would be obligated to defend plaintiffs, barring an applicable policy exclusion, as there is no pollution exclusion or specific exclusion for environmental cleanup costs. Exclusionary provisions within insurance contracts are to be strictly interpreted. Last v. West American Ins. Co., 139 N.J. Super. 456, 460, 354 A.2d 364 (App.Div. 1976). We must accord the exclusionary language its plain import and intent. Ibid. CGL policies cover losses or liabilities on account of property damage sustained by parties other than the insured itself, as they are not insurance policies providing an insured first-party coverage for losses sustained to the insured's property. Broadwell Realty Srvs., Inc. v. Fidelity & Cas. Co. of N.Y., 218 N.J. Super. 516, 528, 528 A.2d 76 (App.Div. 1987) ("obvious purpose [of `owned property' exclusion] is to exclude from the insurer's indemnification obligation claims based upon damage or loss to its own property"), overruled on other grounds, Morton, supra, 134 N.J. at 28, 629 A.2d 831.
The Law Division judge in the present case observed that where contaminated groundwater has migrated to another's property, an insured may be entitled to recover costs associated with removing the source of the contamination, but concluded that because no owner of "other property" was seeking damages for contamination of its groundwater, "any claims that plaintiffs have established extensive groundwater contamination on the property conveyed do not change the result until that alleged contamination has moved off the property which is the subject of this litigation." The judge concluded that there was no evidence of imminent threat to other property.
In UMC Stamford, Inc. v. Allianz Underwriters Ins. Co., 276 N.J. Super. 52, 647 A.2d 182 (Law Div. 1994), the judge found that an owned property exclusion in a CGL policy would not bar coverage for cleanup costs if groundwater was found to be contaminated *77 on property owned by the insured and it was established, to a reasonable degree of certainty, that the groundwater was likely to migrate and cause off-site damage. 276 N.J. Super. at 62, 647 A.2d 182. However, in Reliance Ins. Co. v. Armstrong World Indus., 265 N.J. Super. 148, 625 A.2d 601 (Law Div. 1993), reversed, 292 N.J. Super. 365, 678 A.2d 1152 (App.Div. 1996), the Law Division judge found that owned property and alienated premises exclusions in a CGL policy barred recovery of groundwater cleanup costs at an insured site although the costs were incurred to prevent actual and threatened harm to third-party property. 265 N.J. Super. at 153-54, 625 A.2d 601.
In Morrone v. Harleysville Mut. Ins. Co., supra, 283 N.J. Super. at 419-20, 662 A.2d 562, we considered these conflicting trial court decisions, and noted that each was cogent and well reasoned. We regarded groundwater as generally migratory in nature, thereby defying "the custody or control of a property owner," and thus concluded it did not clearly fall within the category of "owned property." Ibid. Because exclusionary clauses must be narrowly read and ambiguities are to be resolved in favor of the insured, Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 176, 607 A.2d 1255 (1992), we held that the insurer was obligated to defend groundwater damage claims, despite the policy's owned property exclusion. See also, Pittston Co. v. Allianz Ins. Co., 905 F. Supp. 1279 (D.N.J. 1995).
We have heard extensive argument on all aspects of the issue by virtue of our entertaining oral argument on eight cases involving this common issue. After full consideration of all relevant arguments, we see no need to revisit the issue or to rehash the various policy reasons for and against holdings finding coverage. We are satisfied that our holding in Morrone, supra, should not be disturbed. Indeed, in our decision in Reliance, supra, we have held that groundwater contamination is also not excluded by the "use" and "care, custody or control" exclusions of CGL policies.
In the present case, although certain expert reports indicate the presence of groundwater contamination, the reports do not themselves *78 assert that the contamination originated with plaintiffs' property. This, however, does not detract from Franklin's obligation to defend plaintiffs against the claims asserted by Banisch and Elizabethtown. Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 173, 607 A.2d 1255. As to those allegations of liability related to groundwater contamination, the owned property exclusion would not relieve Franklin of its duty to defend and indemnify plaintiffs under our holding in Morrone, supra.
In State v. Signo Trading Int'l, Inc., supra, a bare majority of the Supreme Court, as then constituted, concluded that under the owned-property exclusion, no coverage was provided for "the costs of clean-up performed by or on behalf of an insured on its own property when those costs are incurred to alleviate damage to the insured's own property and not to the property of a third party." 130 N.J. at 63, 612 A.2d 932. It may be that the issue warrants reconsideration in light of the subsequent holding in Morton, supra. The troubling lines to be drawn as to when clean-up is required and the difficulty in apportioning the costs of clean-ups appear to militate against barring recovery for environmental clean-up at the source of the contamination. Considering the interconnection between the soil and the surrounding groundwater, remediation of adjacent soil contamination appears to be required to prevent future damage to groundwater when a past contamination is shown. There would appear to be sound basis for the position that, just as with groundwater, contamination of soil will ultimately end up endangering the health or property of others, and while it is arguable that damage to owned property has occurred, the recovery sought is not for that damage, but to prevent damage to others and their property. See Signo, supra, 130 N.J. at 64, 612 A.2d 932 (the Court noted the "narrow exception" for coverage "allowing recovery for the cost of measures intended to prevent imminent or immediate future damage when a present injury had already been demonstrated").
However, notwithstanding that there were no allegations of damage to adjacent properties, plaintiffs maintain that despite the *79 owned property exclusion, Franklin is obligated to defend and indemnify them for the environmental claims arising from soil contamination of their own property. Plaintiffs assert that the absence of an alienated property clause, which would exclude coverage for property damage to the property they previously owned, requires Franklin to defend and indemnify them for the third-party claims brought against them.
The inclusion within a liability insurance policy of an exclusion for "premises alienated by the named insured" is designed to extend the "owned property" exclusion to claims by subsequent owners of the property previously owned by the insured. See Wickner v. American Reliance Ins. Co., 141 N.J. 392, 396-97, 661 A.2d 1256 (1995); Morrone v. Harleysville Mut. Ins. Co., supra, 283 N.J. Super. at 416-17, 662 A.2d 562; Cf. Hatco Corp. v. W.R. Grace & Co., 801 F. Supp. 1334, 1359 (D.N.J. 1992). The policy included an exclusion for bodily injury or property damage "arising out of any premises which is not [an] insured premises here," and under the heading "Non-Owned Property," the policy excluded property damage to property "in the care of, occupied or used by, or rented to, any insured." "Insured premises" is defined in the policy's glossary as "a one to four family house you own."
Once the property was sold, plaintiffs no longer owned it and the property, by definition, could not qualify as "insured premises." As simply stated by the motion judge, plaintiffs were not entitled to this coverage when they owned it and they are not entitled to coverage now merely because they have sold it. If plaintiffs' contention were accepted, they would receive more insurance protection by virtue of having sold their property than they had when they owned it. See Wickner v. American Reliance Ins. Co., supra, 141 N.J. at 396, 661 A.2d 1256. We, therefore, reject plaintiffs' argument that because the underlying lawsuits were brought after they no longer owned the property at issue, the owned property exclusion was not applicable since the insurance policies did not contain alienation clauses.
*80 Lastly, defendant asserts that the business risks exclusion precludes coverage inasmuch as groundwater contamination, if any, arose from plaintiffs' commercial activities. The record, however, is unclear as to where the contaminants originated or whether they were caused by commercial or non-commercial activities. Whether an insurer has a duty to defend an action against an insured is evaluated by comparing the allegations of the complaint with the language of the policy. Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 173, 607 A.2d 1255. The duty to defend arises if the complaint states a claim that constitutes a risk falling within the purview of the policy language. Ibid.; Danek v. Hommer, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div. 1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). If the allegations of the complaint are ambiguous, doubts regarding coverage are resolved in favor of the insured. Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 173, 607 A.2d 1255; Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J. Super. 467, 470, 557 A.2d 693 (App.Div. 1989).
The cross-claims asserted against plaintiffs by Elizabethtown and Banisch are claims for contribution and indemnification to the extent that plaintiffs may have caused the contamination alleged. They do not specifically allege that the garage activity on plaintiffs' property contributed to the contamination at the site. The report issued by the engineering firm hired by RAAD to conduct soil samplings, concluded that MGP wastes found in the soil at the site were "generated through the operation of two former MGP facilities located roughly two hundred feet away" owned by Jersey Central and Elizabethtown. The report included the firm's opinion that the contaminants found in plaintiffs' soil did not come from the automotive repair business conducted at the site.
Any ambiguities in the pleadings must be resolved in favor of coverage, and there were no allegations in the cross-claims that plaintiffs' liability arose as a result of the business activities conducted on their property. Therefore, the business risks exclusion *81 will not at this juncture relieve Franklin of its duty to defend or indemnify plaintiffs against the cross-claims.
We affirm the summary judgment as it pertains to defense and indemnification for the claims regarding soil contamination. We reverse that portion of the order holding that Franklin had no duty to defend or indemnify plaintiffs for claims arising from groundwater contamination.
Affirmed in part; reversed and remanded in part.
Judge STERN concurs for the reasons expressed in his concurring opinion in Reliance v. Armstrong, 292 N.J. Super. 365, 678 A.2d 1152 (App.Div. 1996).