680 A.2d 783

THE TRUSTEES OF PRINCETON UNIVERSITY, A NOT–FOR–PROFIT EDUCATIONAL CORP. OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. AETNA CASUALTY & SURETY COMPANY, DEFENDANT, AND CENTENNIAL INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, AND NORTH RIVER INSURANCE COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 12, 1996—Decided August 14, 1996.

Before Judges KING, LANDAU and KLEINER.

*Edward Tessler* argued the cause for appellant (*Anderson Kill Olick & Oshinsky,* attorneys; *Mr. Tessler* and *Elizabeth A. Sherwin,* on the brief).

*Susan Dignam Colatsky* argued the cause for respondent Insurance Company of North America (*White and Williams,* attorneys; *Ms. Colatsky* and *John J. Lawson,* on the brief).

No brief filed on behalf of respondents North River Insurance Company and Centennial Insurance Company.

The opinion of the court was delivered by

KING, P.J.A.D.

I.

This case presents a claim that a liability insurance company must, upon the demand of the insured, defend an environmental damage claim, if the insured waives in advance any potential

conflict of interest. We decline to rule that an insured may unilaterally compel the insurer to provide a defense in the circumstance. If, of course, the insured prevails in a subsequent damage action against the insurance carrier, the insurer must pay the costs of defense, indemnity for loss, interest on those claims, and perhaps counsel fees per *R.* 4:42–9(a)(6).

Plaintiff Princeton University (Princeton) filed a complaint and an amended complaint in 1994 against several of its insurance carriers. The amended complaint alleged that Aetna Casualty & Surety Company (Aetna), The Insurance Company of North America (INA), and the excess insurance companies (Centennial and North River) breached their obligations to Princeton to defend the claims relating to environmental contamination at two sites, the James C. Forrestal Campus (Forrestal site) and the Helen Kramer Landfill (Kramer site).

Princeton filed a motion for partial summary judgment in September 1995 seeking a ruling that Aetna and INA were obligated to pay Princeton's past and future defense costs incurred in connection with the Forrestal and Kramer sites. Judge Hamlin heard argument on the motion in November 1995 and issued a decision denying partial summary judgment. On April 23, 1996 we granted Princeton's motion for leave to appeal this interlocutory order. *R.* 2:2–3(b). After settling with Aetna, Princeton withdrew its appeal against Aetna.

## II.

Princeton seeks liability insurance coverage from INA for claims arising out of separate proceedings relating to alleged environmental property damage at the Forrestal and Kramer sites.

### 1. The Forrestal Site

Princeton has owned and operated the Forrestal Campus since 1951. Some of the major research facilities located on the Forrestal Campus include the Jet Propulsion Laboratory, the High–

Energy Physics Laboratory, and the Princeton Plasma Physics Laboratory. The research "projects range from a multi-billion dollar fusion research center sponsored by the United States Department of Energy to research grants in the one thousand dollar range." On January 7, 1993 the New Jersey Department of Environmental Protection (NJDEP) issued a "Directive and Notice to Insurers" regarding the Forrestal site. The NJDEP had tested groundwater at the site and found it contaminated with tetrachlorethane (PCE) and trichloroethane (TCE). The NJDEP ruled that:

7. Princeton University is responsible for the discharges of hazardous substances at the Site which have contaminated and continue to contaminate the lands and waters of the State.

8. Pursuant to *N.J.S.A.* 58:10–23.11g(c), Princeton University is strictly liable, without regard to fault, for all costs of the cleanup and removal of the hazardous substances discharged at the Site.

Without admitting fault or liability, Princeton entered into a Memorandum of Understanding with the NJDEP, detailing steps which it would take to remediate the Forrestal site. The NJDEP also identified Princeton as a potentially responsible party for groundwater contamination found at residential and business sites west of the Forrestal site but agreed to address this issue at a later date.

## 2. The Kramer Site

In 1983, the Helen Kramer Landfill was placed on the National Priorities List established pursuant to the Comprehensive Environmental Response Control and Liability Act (CERCLA), 42 *U.S.C.A.* § 9605(a). The EPA and the NJDEP have commenced separate actions against the owner of the Kramer site and others. On September 6, 1991 Princeton was named as a third-party defendant in those actions. The complaints allege that Princeton is partially responsible for cleanup costs at the Kramer site because liquid sewage sludge generated by Princeton was dumped there. Strict liability is also the basis for these claims.

INA issued three comprehensive general liability policies to Princeton for the periods from July 1, 1980 to July 1, 1987. The policies provide:

The Company [INA] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ...

The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Princeton notified INA that it was potentially liable for contamination at the Forrestal and Kramer sites. INA has refused to undertake the defense of Princeton or reimburse it for defense costs incurred. Princeton now contends that INA must undertake the defense at this point because Princeton has agreed to waive "any perceived or actual conflict of interest" and "agrees that INA may reserve its rights to contest coverage while paying costs of defense or undertaking the defense of these proceedings."

## III.

Princeton contends that pursuant to provisions in its comprehensive general liability policies INA has a duty to undertake its defense in the NJDER proceedings relating to the Forrestal and Kramer sites. INA maintains that it has no such present duty. Judge Hamlin appropriately emphasized the importance of this issue to the parties, stating:

The financial stakes can effectively make such a ruling the essentially dispositive one without ever reaching the underlying substantive disputes. The difficulty is compounded because we work with rules that developed in much simpler circumstances with much less at stake and clearer policy considerations than apply in environmental coverage litigation. When disputed coverage arose over whether a discrete event with few actors was intentional or negligent, the costs of the defense [were] not a major consideration and it is doubtful that those courts gave any

serious consideration to the financial impact of their decisions. In any event, the resolution of the duty to defend would not be unduly delayed in those cases because the trial of discrete issues could be resolved in a relatively short period of time. None of those factors apply in the typical environmental coverage action. In such actions an insured usually seeks coverage on policies written as much as 20 or 30 years ago when neither party was fully sensitive to environmental damage or could possibly forecast the monumental costs of clean-up much less the expenses of sophisticated investigation and defense. Where clean-up costs may range in the hundreds of millions of dollars, defense costs alone can bankrupt an insured or do serious damage to all but the largest of insurance carriers.

However, relying on the rule established in *Burd v. Sussex Mutual Insurance Co.*, 56 *N.J.* 383, 267 *A.*2d 7 (1970), Judge Hamlin concluded that INA had no presently enforceable duty to defend Princeton. We agree.

## IV.

When determining whether an insurance carrier has a duty to defend:

[T]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgement, and in reaching a conclusion, doubts should be resolved in favor of the insured.

[*Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div.1953), *aff'd o.b.,* 15 *N.J.* 573, 105 *A.*2d 677 (1954) (citing *Appleman, Insurance Law and Practice,* § 4683, 1953 Pocket Part).]

"The duty to defend comes into being when the complaint states a claim constituting a risk insured against." *Ibid.* "Stated another way, the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." *Hartford Acc. & Indem. Co. v. Aetna Life & Cas., Ins.,* 98 *N.J.* 18, 22, 483 *A.*2d 402 (1984). Whether a claim is groundless, false, or fraudulent is irrelevant to the duty to defend. *Danek, supra,* 28 *N.J.Super.* at 77, 100 *A.*2d 198; *Hartford, supra,* 98 *N.J.* at 22, 483 *A.*2d 402. When a claim is made which, if valid, would trigger coverage, the duty to defend arises even if the claim itself ultimately proves to be unsuccessful or groundless. Judge Pressler explained this general rule in *Hartford Ins. Group v. Marson Constr. Corp.,* 186 *N.J.Super.* 253, 257, 452 *A.*2d 473

(App.Div.1982), *certif. denied*, 93 *N.J.* 247, 460 *A.*2d 656 (1983), as follows:

> As a general proposition, it is clear that under the typical liability policy, the duty of an insurer to defend is broader than its obligation to indemnify. The insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which might potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obligated to pay.

Our Supreme Court in *Burd, supra*, 56 *N.J.* 383, 267 *A.*2d 7, established an exception to this general rule. In that case, plaintiff Burd had been convicted of atrocious assault and battery for shooting D'Agostino with a shotgun. *Id.* at 386, 267 *A.*2d 7. Burd called upon his insurance carrier for a defense when D'Agostino brought a civil action against him. The company refused on the ground that the insurance policy covered accidental injury but excluded coverage of "bodily injury or property damage caused intentionally by or at the direction of the Insured." *Id.* at 387, 267 *A.*2d 7. The difficulty arose because D'Agostino had alleged claims for both intentional and negligent injury in his complaint. At least one count alleged only "negligence" and on its face was covered.

The Court observed that the insurance carrier's duty to pay a potential judgment "depended upon whether the injuries were intentionally inflicted within the meaning of the exclusionary clause." *Id.* at 389, 267 *A.*2d 7. It explained:

> There may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interest. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense.
>
> [*Ibid.*]

*Burd* has been generally understood as giving insurance companies a right to refuse to defend insureds in certain circumstances. In *Hartford, supra*, 98 *N.J.* 18, 483 *A.*2d 402, an Aetna policy covered the insured drug manufacturer until February 10, 1971. The complaint filed by the injured party against the drug manu-

facturer alleged that liability occurred when the drug was ingested "in and about the month of February, 1971." *Id.* at 21, 483 *A.*2d 402. Aetna declined to defend because it believed the relevant events took place after its coverage ended; it reserved the right to litigate the coverage issue in a separate suit with the insured. The Supreme Court adopted Judge Skillman's unreported opinion in its entirety. He explained that "this case like *Burd* was one in which the insurer not only was within its rights in refusing to take over the defense on behalf of its insured but [was] in fact obligated to follow that course once it denied coverage." *Id.* at 24, 483 *A.*2d 402. In a footnote, Judge Skillman said that "[t]he practical effect of *Burd* is that an insured must initially assume the costs of defense itself, subject to reimbursement by the insurer if it prevails on the coverage question." *Id.* at 24 n. 3, 483 *A.*2d 402.

In following *Burd* and *Hartford,* we recently stated:

An insurance carrier may properly decline to provide a defense to the insured under either of two scenarios:

(1) If the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or

(2) If the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage

[*Rutgers v. Liberty Mutual Ins. Co.,* 277 *N.J.Super.* 571, 578, 649 *A.*2d 1362 (App.Div.1994), *appeal granted,* 140 *N.J.* 274, 658 *A.*2d 298, and *appeal dismissed,* 143 *N.J.* 314, 670 *A.*2d 1057 (1995).]

The facts in *Rutgers* were similar to those presented by the case before us. A third party filed suit against Rutgers University and others, claiming that "Rutgers and others spilled, discharged or released DDT and petroleum, or petroleum products on, in or to" certain property, contaminating the property. *Rutgers, supra,* 277 *N.J.Super.* at 574, 649 *A.*2d 1362. In one paragraph, the third party alleged that Rutgers was "negligent" and that its conduct violated the Spill Compensation and Control Act, the Water Pollution Control Act, and the Solid Waste Act. *Ibid.* Liberty Mutual declined coverage on the ground that the contamination was "expected or intended from the standpoint of Rutgers University." *Id.* at 575, 649 *A.*2d 1362. On a partial summary judgment motion, the Law Division judge ruled that Liberty Mutual's duty

to defend was "unmistakable" because "a reasonable reading of the language of the underlying litigation fall[s] within the perimeters of the Liberty coverage." *Id.* at 577, 649 *A.*2d 1362. However, because of the presence of a conflict of interest should Liberty Mutual be permitted to control the defense, the Law Division judge ordered the carrier to fund the defense rather than conduct it. *Ibid.* We disagreed. Relying upon *Burd* and *Hartford,* we determined that, notwithstanding the fact that the allegations in the complaint implicated coverage, Liberty Mutual was not obligated to defend until the question of Rutgers' subjective intent was decided. We remanded the case for that determination "after a complete development of the factual record." *Id.* at 572, 649 *A.*2d 1362.

*Morton Intern. v. General Acc. Ins.,* 266 *N.J.Super.* 300, 629 *A.*2d 895 (App.Div.1991), *aff'd,* 134 *N.J.* 1, 629 *A.*2d 831 (1993), presented a situation even more similar to the present case. In *Morton* the insured sought to recoup its defense expenses, arguing that at least some of the allegations in the complaint were potentially within its insurance coverage. We stated:

> The similarity between *Burd* and the case before us is at once apparent. The litigation between the DEP and plaintiff in the present case did not and could not resolve the issue of coverage under the policies involved. The four-count complaint alleged statutory violations emanating from the discharge of mercury and other hazardous substances onto the property and eventually into state waters (Counts I, II and IV) and also alleged a continuing public and private nuisance (Count III). The statutory violations did not require any finding of intent, only a finding of the prohibited discharge. Thus, intent was never an issue in three of the four counts. The fourth count charging public nuisance was based on a strict liability statute and the extension of the principle of strict liability under the common law. Again, intent was irrelevant. With respect to the private nuisance theory it is clear that intent was relevant, but on that issue there would have been a clear conflict of interest between the insurer and plaintiff: plaintiff seeking a finding of unintentional conduct so as to escape the imposition of liability while the insurer, for purposes of coverage, would be interested in having the court find that the plaintiff-insured intended the consequences of his deliberate act. Thus, the very conflict which existed in *Burd* and caused the Court to conclude there was no absolute duty to defend from the outset also exists in the present case.

[*Id.* at 343, 629 *A.*2d 895.]

We concluded that the insured was obligated to provide its own defense, subject to reimbursement by the carrier should the insured prevail on the coverage question. *Id.* at 344, 629 *A.*2d 895. The Supreme Court affirmed and rejected the insured's contention that its insurers had breached their duty to defend, stating:

> The Appellate Division addressed those contentions, concluding that this Court's decisions in [*Hartford* and *Burd* ] were controlling and dispositive.... We are fully in accord with the Appellate Division's determination of the duty-to-defend issue.
>
> [*Morton Intern. v. General Acc. Ins.*, 134 *N.J.* 1, 95, 629 *A.*2d 831 (1993), *cert. denied,* — *U.S.* —, 114 *S.Ct.* 2764, 129 *L.Ed.*2d 878 (1994) (citations omitted).]

The New Jersey federal District Court has also considered whether an insurer has a duty to defend underlying environmental actions similar to the ones at issue in this case. This court explained that "New Jersey law contemplates that the insurance carrier may refrain from actually defending the insured in the underlying litigation where the underlying litigation will not resolve an issue central to coverage." *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co.*, 817 *F.Supp.* 1136, 1161 (D.N.J.1993). The District Court denied a motion for summary judgment on Aetna's present duty to defend, stating:

> In the present case, the underlying CERCLA claim is grounded in strict liability. A comparison of the facts necessary to establish liability under the CERCLA complaint with the facts necessary to establish coverage under Aetna's policies reveals a critical discrepancy on the issue of [the insured's] intent. The issue of intent plays no role in establishing CERCLA liability.
>
> [*Id.* at 1162.]

*See also W.R. Grace & Co. v. Allstate Insurance Co.*, 801 *F.Supp.* 1334, 1364 (D.N.J.1992) (CERCLA claim was based on strict liability; issue of intent would be left unresolved. "In this situation the insurer is within its rights to refuse to pay defense costs until the factual issue is resolved in a proceeding between the insurer and the insured."); *accord, The Grand Cove II v. Ginsberg,* 291 *N.J.Super.* 58, 72, 676 *A.*2d 1123 (App.Div.1996).

■ Princeton contends that the *Burd* rule effectively eliminates the carriers' duty to defend. As the *Burd* Court explained, however, the exception enunciated "is not to free the carrier from

its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the covenant to pay." *Burd, supra,* 56 *N.J.* at 390, 267 *A.*2d 7. The present case falls squarely within the situation contemplated by *Burd.* Judge Hamlin pointed out that the pleadings raise inexorable conflicts between the insured and the carrier:

In addition both carriers assert additional defenses based upon their individual policies and circumstances. In regard to the Forrestal Campus site they specifically raise the following objections.

1.) Princeton knowingly and intentionally disposed of toxic substances.

2.) There was an enforceable pollution exclusion clause in all policies issued after 1970.

3.) Failure to comply with required notice provisions.

4.) The "owned property" exclusion is applicable.

5.) The United States Government indemnification agreements preclude Princeton from seeking defense costs here.

In regard to Kramer, Aetna [and INA] asserts that Princeton is not entitled to a defense on several grounds:

1.) The pollution was expected and intended.

2.) There was an enforceable pollution exclusion in all policies issued after 1970.

3.) Given the facts here the pre 1975 Aetna policies do not apply.

Certain factual matters central to the issue of coverage, particularly Princeton's subjective intent, will be left unresolved by the underlying Forrestal and Kramer administrative actions because that issue is not relevant to Princeton's strict liability for remediation. Moreover, if INA's counsel were permitted to control Princeton's defense, it is doubtful that INA's counsel could be loyal to Princeton without qualification because INA or its counsel could not ignore issues which would assist in the coverage dispute.

We agree with Judge Hamlin's impression that Princeton's tendered waiver accompanying its demand for a defense is illusory. We also reject Princeton's claim that under *Burd, supra,* 56 *N.J.* at 390, 267 *A.*2d 7, it has an absolute, unilateral right to a defense under a non-waiver agreement, even though INA refuses to tender such a defense. We construe *Burd* as saying "the carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of

course the insured expressly agrees to that reservation." *Id.* We do not read *Burd* as compelling an insurer to defend under a non-waiver agreement where the circumstances are conflict-laden with concerns about the insured's intent in discharging pollutants. Moreover, it is unlikely that Princeton's prospective waiver of any right to challenge the manner in which INA conducted the defense actually would be enforceable.

Princeton relies on two cases—*Morrone v. Harleysville Mut. Ins.,* 283 *N.J.Super.* 411, 662 *A.*2d 562 (App.Div.1995), and *Sands v. CIGNA Property and Cas. Ins. Co.,* 289 *N.J.Super.* 344, 674 *A.*2d 169 (App.Div.1995). The primary question in *Morrone* was when the environmental contamination at issue "occurred." After the panel determined that the damage occurred within the policy period, there was no question that at least some of the underlying claims were potentially covered. The panel addressed the *Burd* problem in dicta only, explaining that "[t]he underlying litigation alleges both covered and noncovered claims, potentially necessitating apportionment both as to indemnification and defense costs." The *Morrone* court cited *Hartford, supra,* 98 *N.J.* 18, 483 *A.*2d 402, for the proposition that the "insurer may be required to finance [the] defense subject to a right to reimbursement for costs attributable to noncovered claims." *Morrone, supra,* 283 *N.J.Super.* at 421, 662 *A.*2d 562. *Morrone*'s reliance on *Hartford* for this holding was misplaced. The *Hartford* Court actually concluded that the practical effect of the *Burd* rule is the insured must finance the defense, subject to possible reimbursement from the insurer, not the other way around. The Court did go on to point out:

"[i]t could be argued that in a case such as this, where the trial of the coverage question will simply determine which of two or more insurers must pay rather than possibly result in a finding of no coverage at all, the initial costs of defense should be borne not by the insured, as in *Burd,* but by the insurers, subject to a final allocation of that cost after trial of the coverage question."

[*Hartford, supra,* 98 *N.J.* at 24 n. 3, 483 *A.*2d 402.]

In other words, *Hartford* recognizes that certain circumstances might justify requiring the insurer to fund the defense, even though the *Burd* rule generally operates to transform a duty to

defend into a duty to indemnify for counsel fees. One such circumstance, the *Hartford* Court suggests, might be where the existence of coverage for the insured is clear and the unresolved issue is which carrier is responsible for that coverage. That is not the case before us.

Princeton also relies on *Sands, supra*, 289 *N.J.Super.* 344, 674 *A.*2d 169. On first glance, *Sands* might appear at odds with *Burd* and its progeny. The Sands were named as third-party defendants by a defendant in a CERCLA action; they allegedly leased property to commercial tenants who contributed to local water-supply contamination. The Law Division judge granted the insurer's motion for partial summary judgment on the grounds that there was no present duty to defend the policyholders "when there were coverage issues that would not be resolved in the underlying action or when there was a potential for a conflict of interest between the insurer and policy holder." *Id.* at 348, 674 *A.*2d 169. The panel reversed, ruling that the Law Division judge erred by acting before meaningful discovery was completed and by placing "the burden on the insured when there was no factual basis asserted by the insurance companies for not defending." *Id.* at 349, 674 *A.*2d 169. Princeton asserts that *Sands* stands for the proposition that coverage will be presumed until and unless the carrier comes forward with facts demonstrating that the underlying claims are not covered occurrences. Judge Hamlin rejected this approach, stating that "[i]t would essentially establish a burden of proof on a responding party not found in any other area of the law."

The precise holding of *Sands* is difficult to ascertain. The court said:

> To date, the insurance carriers have not come forward with any information which gives them a bona fide reason to believe that plaintiffs knew or should have known of the contamination and which would permit the carriers to refuse to perform their duty to defend in this case.
>
> [*Id.* at 350, 674 *A.*2d 169.]

The case does not mention *Burd*, or any of its progeny, except *Morton*. *Sands* purports to rely on *Morton*, but as discussed, we think it is absolutely clear that *Morton* did not change the existing *Burd* rule concerning the duty to defend.

Perhaps the best way to view *Sands* is as a case which presented circumstances which did not come within the *Burd* rule, rather than as a case which imposes a new, exceptional "presumption" of coverage. *Sands* says:

> Herein, ... there is no evidence that would indicate that plaintiffs were anything other than innocent landowners or that they were responsible for causing or contributing to environmental pollution, and there is no evidence that there was any intentional or knowing contribution by plaintiffs to polluting the sites.... [S]ince there is no apparent conflict in the record to date, [the insurance carriers] should not be permitted to turn their duty to defend into a duty to reimburse.
>
> If the trial judge were correct, then insurers could claim in any case that a trial may develop facts that create a conflict with their policyholders.
>
> [*Id.* at 350–51, 674 A.2d 169.]

Another possible explanation for *Sands* is that it presented circumstances which justified a departure from the *Burd* rule. The *Sands* panel pointed out that "[i]n many cases, especially if the insured is an individual, there may be entirely insufficient resources to defend against a CERCLA claim and a party's insurance policy would therefore be a practical nullity." *Id.* at 351, 674 A.2d 169. Again, this is not the case before us; Princeton's financial ability to defend is not in question. In view of the clear conflict raised by the pleadings in the case before us, we find it unnecessary to consider here the concept of "presumptive coverage" and we do not base our decision upon any consideration of that concept.

The facts of this case squarely present the situation contemplated by the *Burd* Court, and Judge Hamlin correctly determined that under the general rule enunciated in *Burd*, INA has no present duty to defend Princeton in the underlying environmental actions.

Affirmed.