277 N.J. Super. 571 (1994)
649 A.2d 1362
RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LIBERTY MUTUAL INSURANCE CO., DEFENDANT-APPELLANT,
v.
CENTENNIAL INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY, INC., AMERICAN INSURANCE COMPANY, TRANS-AMERICA INSURANCE COMPANY, AETNA CASUALTY & SURETY CO., INSURANCE COMPANY OF NORTH AMERICA, HIGHLANDS INSURANCE CO., FEDERAL INSURANCE CO., AND NATIONAL FIRE INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1994.
Decided December 8, 1994.
*572 Before Judges MICHELS, STERN and KEEFE.
Thomas F. Quinn argued the cause for appellant (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Quinn and Ann T. Schmidtberger, on the brief).
Robert D. Chesler argued the cause for respondent, Rutgers, The State University of New Jersey (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Gregory B. Reilly and Mr. Chesler, *573 of counsel; Gregory B. Reilly, Mr. Chesler and Joyce A. Davis, on the brief).
Kevin E. Wolff argued the cause for respondent, Centennial Insurance Company (McElroy, Deutsch & Mulvaney, attorneys; Mr. Wolff and Tracey L. Matura, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
We granted Liberty Mutual Insurance Co.'s (Liberty) motion for leave to appeal from the entry of an order for partial summary judgment requiring Liberty to indemnify Rutgers, The State University of New Jersey (Rutgers) for defense costs already incurred and to be incurred by Rutgers in connection with ongoing environmental litigation. We now reverse the judgment under review and remand the matter for further proceedings for the reasons that follow.
The current litigation stems from an environmental suit brought by Pugliese Realty, a limited partnership, (Pugliese) against Rutgers and others in Ocean County. Pugliese's third amended complaint alleged that it purchased eighty acres of land in Lacey Township, Ocean County, in 1986 with a view toward future residential development. In 1988, Pugliese received a report from a contractor hired by it to perform an environmental investigation of the property that the land and groundwater were contaminated. The report revealed the presence of DDT and petroleum hydrocarbons, with the most severe contamination located in the area of a former airplane hangar.
According to the Pugliese complaint, from 1950 through approximately 1969, the Ocean County Mosquito Extermination Commission (OCMEC) leased the property from Pugliese's predecessor in title, and used it as an airfield to operate its mosquito control aerial spraying program. The aerial spraying was performed by Wilson Air Service, Inc. (Wilson) on OCMEC's behalf. Pugliese contended that OCMEC, Wilson, "and their agents and contractors *574 spilled, discharged or released DDT and petroleum or petroleum products on, in or to the property," causing the contamination.
Specific allegations against Rutgers were made in the second count of the complaint wherein it was alleged that Rutgers "used the property in question as an airfield to operate its mosquito control aerial spraying program." It was further alleged that Rutgers "funded OCMEC and provided guidance, direction and support for its activities[,]" and that "Rutgers and others spilled, discharged or released DDT and petroleum, or petroleum products on, in or to the Property, causing the property to become contaminated and unsaleable." Pugliese alleged that Rutgers "knew or should have known that DDT and petroleum products, if not properly handled and controlled, would contaminate the soils and groundwater on the Property." Paragraph thirty-two of the second county alleged that Rutgers was "negligent" and that its conduct violated the Spill Compensation and Control Act, The Water Pollution Control Act, and The Solid Waste Act. The ad damnum clause sought compensatory damages as well as other relief specifically against Rutgers.
Rutgers is not again mentioned until the fourth count of the complaint in which it is alleged that Rutgers "knew or should have known of the hazardous and toxic nature of DDT to mosquitos, animals, human health and the environment." Pugliese alleged that the storage of DDT and its use were "inherently dangerous activit[ies]" for which Rutgers was "strictly liable in tort." Money damages and other relief were sought in that count.
In the fifth count of the complaint it was alleged that Rutgers committed "a trespass upon or inverse condemnation of plaintiff's property," resulting in damage to Pugliese.
The sixth count of the complaint alleged that Rutgers and the other defendants' conduct constituted a nuisance which proximately resulted in Pugliese's damages. Again, compensatory damages and other forms of relief are sought in that count.
*575 Finally, in the tenth count of the complaint, Pugliese sought mandatory injunctive relief against all defendants, including Rutgers, under the Environmental Rights Act, N.J.S.A. 2A:35-1, requiring that all defendants clean up the property, as well as compensatory damages.
Rutgers apparently became involved in the Pugliese litigation as early as 1990. However, the third amended complaint, from which the above allegations were taken, was served on Rutgers on or about January 22, 1991. Upon receipt of that complaint, it and the complaint served on Rutgers in April, 1990 were forwarded to Liberty by Rutgers' counsel. In that letter, Rutgers requested Liberty to "reimburse it for all defense costs incurred in the matter to date and acknowledge [its] duty to defend and indemnify Rutgers in this matter." Rutgers further asserted: "any liability incurred by your insured with respect to this matter will result from an occurrence potentially taking place during your policy periods, which occurrence caused property damage that was unexcepted (sic) and unintended by your insured."
On October 22, 1991, after conducting some investigation, Liberty advised Rutgers that it was declining coverage on various grounds. Specifically, as it pertains to the judgment under review, Liberty declined coverage on the ground that the property damage was "expected or intended from the stand point of Rutgers University."
Liberty concedes that it provided comprehensive general liability coverage to Rutgers for the period of January 1, 1964, to July 1, 1972, through various separate policies. The policies all provided coverage to Rutgers for property damage on an "occurrence" basis. The wording of the "occurrence" coverage clause varied slightly in the policies. However, Liberty essentially agreed to pay "all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this policy applies caused by an occurrence." Liberty also had "the right and duty to defend any suit against the insured seeking damages on account of ... property damage, even if any of the *576 allegations of the suit are groundless, false or fraudulent." An "occurrence" was defined as "an accident, including injurious exposure to conditions, neither expected nor intended from the standpoint of the insured."
On January 17, 1992, a partial settlement agreement was executed between Pugliese, Rutgers, OCMEC and the County of Burlington. Under the terms of the partial settlement, the parties paid some of Pugliese's economic damages and the soil remediation costs. Specifically, Rutgers agreed to pay Pugliese the sum of $33,000 with respect to economic damages and 45% of the soil remediation costs which totalled $6.7 million. Thus, the remaining issue in the Pugliese suit concerns the alleged ground water contamination. Rutgers is not now seeking indemnity for its settlement costs.
Rutgers filed this motion for partial summary judgment seeking indemnification for defense costs already incurred and for future defense costs, in February 1993, eight months after suit was instituted. In the Law Division, Rutgers argued that Liberty's duty to defend is simply controlled by the allegations of the underlying complaint, all of which allege property damage resulting from conduct which, if Pugliese's allegations are found to be true, result from an occurrence for which Liberty has agreed to provide indemnity insurance. In reply to that argument, Liberty contended that there were many factual issues that would not be resolved in the Pugliese action that would impact on the question of whether coverage was provided for the damages alleged in that action. For that reason, Liberty argued that it rightfully declined to undertake the defense of Rutgers and maintained that its duty to defend (i.e. provide indemnity for defense costs) must necessarily await a trial on the issue of coverage. Relying upon Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 483 A.2d 402 (1984), Liberty maintained that, in the circumstances of this case, "the duty to defend must be decided concomitant with the duty to indemnify." Liberty argued that discovery had not yet been completed to the point where a meaningful analysis could *577 be made concerning Rutgers' conduct with respect to the underlying litigation:
The Law Division judge held that
[t]he duty to defend arises by examination of the allegations of the complaint and, under prevailing New Jersey law, if those allegations include those which may be covered by any reasonable interpretation of the policy language then the carrier is required to provide a defense with the duty to indemnify to be determined at a later date. In the instant case while it is true that there are other periods of time involved with other coverage, there is no substantial question that a reasonable reading of the language of the underlying litigation fall[s] within the perimeters of the Liberty coverage. The duty to defend is unmistakable.
Notwithstanding the judge's determination that Liberty had the duty to defend, he found that Liberty's designated counsel could not undertake the defense because of the presence of a conflict as to certain "factual issues" concerning Rutgers' "control and use of the property in question[.]" Thus, he ordered Liberty to pay Rutgers the reasonable attorney fees and costs already expended, and to continue to fund the defense cost for the remainder of the litigation, reserving to Liberty the right to seek contribution from its co-defendant insurers at some future date. He further held that Liberty's obligation to indemnify Rutgers with respect to its settlement and/or future judgment of damages "will await determination on the merits."
We agree with the Law Division judge's observation that ordinarily an insurer is obligated to defend an action whenever the complaint alleges a basis of liability within the covenant to pay, as in this case. Hartford Ins. Group v. Marson Constr. Corp., 186 N.J. Super. 253, 257, 452 A.2d 473 (App.Div. 1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983). However, that general rule has several exceptions. As noted in Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388, 267 A.2d 7 (1970), "when coverage, i.e., the duty to pay, depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint." Thus, in that case, where the obligation to pay damages sustained by an injured party depended upon whether the injuries were intentionally inflicted within the *578 meaning of an exclusion in the policy, the Court held that the insurance company was entitled to have a separate trial to determine whether "in truth" the injury sustained by the victim was within the exclusion contained in the policy and, thus, beyond coverage. Id. at 396, 267 A.2d 7.
An insurance carrier may properly decline to provide a defense to the insured under either of two scenarios:
(1) If the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or
(2) If the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense.
[Id. at 389, 267 A.2d 7.]
If either, or both, of the above two circumstances exist in a given case, and the insurance company has not assumed the defense under a reservation of rights, see id. at 390, 267 A.2d 7, and the litigation between the insured and the insurer results in a finding of coverage, then the insurer's obligation to defend "translate[s].... into one to reimburse the insured[.]" Id. at 390, 394, 267 A.2d 7.
Under current New Jersey law, coverage is excluded only if the insured subjectively intended to cause the injury or damage in question. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 184, 607 A.2d 1255 (1992). Thus, the covenant to pay has arisen where the insured's act is intentional, but the injury resulting from the act is not intended from the standpoint of the insured. Ibid. In its letter declining coverage, Liberty stated that Rutgers' involvement in the spraying program, and its knowledge of the properties of DDT, suggested that the property damage resulting from its conduct was expected or intended from Rutgers' standpoint. If Liberty's allegations are true, it has no obligation to pay either the settlement, or any judgment resulting from the Pugliese suit. In that respect, Liberty's obligation to defend is co-extensive with, and not broader than, its obligation to indemnify.
Because Liberty intended to deny coverage it was not permitted to assume the defense of Rutgers "unless of course the insured *579 expressly agrees to that reservation[,]" an event that did not occur here. Burd, supra, 56 N.J. at 390, 267 A.2d 7. Furthermore, the issue of Rutgers' subjective intent is not an issue in the Pugliese litigation. Pugliese's allegations of negligence and strict liability do not require a determination that Rutgers' conduct was intentional, no less whether it intended to cause injury. Likewise, although Pugliese's allegations of trespass and nuisance may require proof of intentional conduct, the inquiry does not require Pugliese to prove that the damage flowing from that conduct was subjectively intended. Thus, even if we assume, for the purpose of this discussion, that the pleadings when compared to the insurance policy do not allege a cause of action excluded by the policy, it is clear from the position taken by Liberty with respect to coverage that the underlying suit "will leave the question of coverage unresolved." Id. at 389, 267 A.2d 7.
The complaint need not on its face allege a cause of action that would exclude coverage under the policy in order to justify an insurance company's refusal to defend and reserve to itself the right to litigate in a separate suit whether it has an obligation to pay the insured. This point was made clear in Hartford Acc. & Indem. Co., supra. That case involved a suit between two insurance companies who insured a drug manufacturer. The plaintiff in the underlying lawsuit ingested a drug made by the insured resulting in certain personal injuries manifested in February, 1971. The complaint filed by the injured party against the drug manufacturer alleged that the events establishing the liability of the manufacturer occurred "`in and about the month of February 1971.'" 98 N.J. at 21, 483 A.2d 402. Aetna's coverage terminated on February 10, 1971. Hartford's coverage began on February 11, 1971. Although the complaint alleged a cause of action that potentially fell within the Aetna policy, Aetna declined to defend. It declined coverage because it believed that the ingestion of the drugs and the manifestation of injury occurred after its policy terminated. It reserved the right to litigate that issue in a separate suit with its insured. Hartford, however, maintained that Aetna should be held liable for 50% of the amount of the *580 judgment and defense costs, regardless of when the drug was actually administered or caused bodily injury, because Aetna breached its duty to defend based on the allegations of the complaint. The Court, adopting Judge Skillman's unreported Appellate Division decision in its entirety, disagreed with Hartford's position. It pointed out that the critical dates concerning coverage were not relevant to a proper defense of the underlying product liability suit, and for that reason, Aetna could not, and should not have undertaken the insured's defense. Id. at 24, 483 A.2d 402. It said: "[t]his case like Burd was one in which the insurer not only was within its rights in refusing to take over the defense on behalf of its insured but [was] in fact obligated to follow that course once it denied coverage." Ibid. Interestingly, the Court also observed:
The practical effect of Burd is that an insured must initially assume the costs of the defense itself, subject to reimbursement by the insurer if it prevails on the coverage question.
[Ibid.]
The principles so clearly set forth in Burd supra, and Hartford Acc. & Indem. Co., supra, have recently been reinforced by the Supreme Court in Morton Intern. v. General Acc. Ins., 134 N.J. 1, 95, 629 A.2d 831 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994).
Contrary to Rutgers' argument, Voorhees, supra, is not "dispositive of this appeal." Burd, supra, was specifically acknowledged by the Voorhees court and its rule applied as follows:
Thus, Preferred Mutual will be required to defend Voorhees against the allegations of infliction of emotional distress only if Preferred would have to indemnify her if liability is found, a circumstance that would be true only if the injuries were caused by an event that could be deemed an "occurrence."
[Voorhees, supra, 128 N.J. at 180, 607 A.2d 1255.]
It is true that the Court said: "Preferred Mutual had a duty to defend unless and until a subjective intent to injure had been demonstrated." Id. at 185, 607 A.2d 1255. However, the Court did not decide that Preferred Mutual had an obligation to defend Voorhees simply on the basis of comparing the complaint in the underlying case with the insurance policy. Rather, it looked to *581 the actual facts of the underlying case and observed: "[a]lthough Voorhees' statements were unquestionably intentional, there is little evidence that she intended or expected to injure the school teacher. Our impression is that she was motivated by concern for her child rather than by a desire to injure the teacher." Ibid. In essence, the Court found coverage and then translated the duty to defend into a duty to indemnify the insured for costs incurred by Voorhees in defending the action.
Thus, we are satisfied that the Law Division judge here erred in deciding Liberty's obligation to defend solely upon a comparison of the Pugliese third amended complaint against Liberty's occurrence policy.
The question of whether Liberty has a good faith basis for its allegation that Rutgers acted with the subjective intent to cause damage to Pugliese's property has never been addressed by the trial court. We are aware from the briefs filed on appeal that some discovery is available relevant to that issue. Liberty points to the deposition of a Rutgers employee who supervised the mixing of the DDT with oil at the hanger site, among other things, to show the factual basis for its position that such conduct, coupled with Rutgers' scientific knowledge of the dangers of DDT, circumstantially prove that Rutgers must have expected the damage that resulted from its conduct. However, Liberty maintains that discovery was not complete by the time Rutgers's summary judgment motion was brought. Indeed, discovery was not an issue in the trial court because Rutgers maintained that Liberty's obligation to defend was satisfied by the Pugliese complaint standing alone. Although Rutgers maintains that its initial argument before the Law Division is sound, it argues as an alternative basis on appeal, that we should affirm the Law Division decision because facts outside of the pleadings indicate that Liberty does not have a good faith basis to assert a factual dispute concerning coverage. We decline to address this issue because it was not briefed or argued in the Law Division. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
*582 Thus, we remand the matter to the Law Division for a complete development of the factual record so that a proper determination can be made as to whether coverage is provided for Rutgers under the Liberty policies. In these circumstances, the obligation to pay will determine retrospectively whether Liberty had the obligation to defend. Jurisdiction is not retained.