759 A.2d 348 (2000)
334 N.J. Super. 282
The MURALO COMPANY, INC., Plaintiff-Appellant,
v.
EMPLOYERS INSURANCE OF WAUSAU, and Zurich Insurance Group, Defendants-Respondents, and
Aetna Casualty & Surety Company, Greater New York Mutual Insurance Company, Hartford Accident & Indemnity Company, Home Insurance Company, New Jersey Manufacturers Insurance Company, and Royal Insurance Company of America, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2000.
Decided October 5, 2000.
*349 Carl A. Salisbury, Clark, argued the cause for appellant (Killian & Salisbury, attorneys; Mr. Salisbury, on the brief; Gary S. Lipshutz, on the brief).
W. Gerald McElroy (Zelle, Hofmann, Voelbel & Gette) of the Massachusetts bar, admitted pro hac vice, argued the cause for respondent Employers Insurance of Wausau (William S. Wachenfeld, Mendes & Mount, Newark, attorneys; Mr. McElroy and Mr. Wachenfeld, on the joint brief).
Robert W. Muilenburg, Morristown, argued the cause for respondent Zurich Insurance Company (McElroy, Deutsch & Mulvaney, attorneys; Mr. Muilenburg, on the joint brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an environmental contamination, declaratory judgment coverage action. Plaintiff Muralo Company, Inc. (Muralo), appeals from summary judgments dismissing its complaint against its two non-settling insurers, defendants Zurich Insurance Company (Zurich) and Employers Insurance of Wausau (Wausau), whereby it sought reimbursement for the defense *350 costs and indemnity obligation incurred by it as the result of an underlying action brought against it by the so-called Winko parties, which litigation it had settled during the pendency of this coverage action. We affirm in part, reverse in part and remand for further proceedings.
There is no substantial dispute of relevant fact. In 1955, a company named Hotopp leased a site on Gates Avenue in Jersey City which it used for the manufacture of paint, varnish and industrial finish. In 1971, plaintiff acquired Hotopp and moved its entire manufacturing operation to Bayonne. Hotopp operated as a wholly-owned subsidiary of plaintiff until 1981, when it was dissolved and its operations merged directly into those of plaintiff. In 1972, shortly after Hotopp's move to Bayonne, another corporation, Winko New Jersey, wholly unrelated to Hotopp or plaintiff, purchased Hotopp's Jersey City site and leased it to its, Winko's, affiliated company, Republic Container Corporation. Republic operated a paperboard factory across the street from the Hotopp site on Kennedy Boulevard and apparently expanded its operations to the Hotopp site. In 1990, Republic contracted to sell its business assets to yet another company, triggering the applicability of the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to -35.[1]
Pursuant to the provisions of ECRA, the Department of Environmental Protection (DEP) became involved in the investigation and cleanup of Republic's Kennedy Boulevard paperboard factory, the original Hotopp Gates Avenue site, a parcel owned by Republic on Gates Avenue immediately adjacent to the Hotopp site, and a parcel owned by Republic just west of its Kennedy Boulevard site. During the course of litigation, the contiguous parcels comprising the original Hotopp site were designated as Parcels B through F, inclusive; the Republic-owned parcel adjacent to the Hotopp site was designated as parcel A; and the Republic-owned site on the Kennedy Boulevard side of the street was designated as Parcel G.
As it turned out, there was substantial soil contamination on all seven parcels requiring soil remediation, accomplished by removing the contaminated soil, removing underground tanks and buried drums of pollutants wherever they were found, and filling excavated areas with clean backfill. The only site requiring testing for groundwater contamination was Parcel F, and the results of testing on two occasions satisfied DEP that there was no groundwater contamination of a level requiring water remediation. DEP was obviously satisfied that removal of the contaminated soil, tanks and drums eliminated whatever threat there was to groundwater. These investigatory and remediation activities were concluded by DEP's issuance of a No Further Action Declaration for each of the sites pursuant to N.J.S.A. 58:10B-13.1 and N.J.A.C. 7:26C-2.6 between January 1993 and March 1997.
In June 1994 Winko and its affiliates (hereafter Winko) filed a complaint in the United States District Court for the District of New Jersey seeking compensation from plaintiff under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C.A. § 9601, et seq. (CERCLA).[2] The basic allegations of the complaint were that plaintiff had released hazardous substances into the soil and in buried drums; that it had done so negligently, carelessly and recklessly; that the release of those substances "into the soil, surface water and/or ground water" caused "significant environmental contamination"; and that it is liable to Winko for its damage resulting *351 from the release "including but not limited to the soil, surface water and ground water contamination."
Plaintiff sought a defense from all the carriers from whom it had obtained general comprehensive and liability coverage during the period of Hotopp's use of the Gates Avenue property, including defendants Zurich and Wausau, which had each issued comprehensive general liability policies for a portion of that period. The carriers disclaimed, and plaintiff commenced this coverage action against eight insurers in 1996. In 1997 plaintiff and Winko settled the federal action, plaintiff paying $550,000 in full settlement of all claims of Winko attributable to the condition of the site, the site defined as including the parcels denominated as Parcel A through Parcel G, inclusive. There was no allocation of the settlement based on specific sites, or the nature of the contamination alleged, or the nature of the remediation undertaken, or, indeed, on any other basis.
In 1998, plaintiff and the carrier engaged in court-ordered mediation, which resulted in its settlement with five of the defendant carriers. The terms of those settlements are not part of this record and have not been disclosed to us. In any event those settlements left only Zurich and Wausau defending the coverage action.[3] Both were successful in obtaining partial summary judgment relieving them of both the defense and the indemnity obligation in respect of Parcels A and G, the non-owned parcels, and then a second and final summary judgment relieving them of the defense and the indemnity obligation in respect of Parcels B through F, the owned-parcels.
As we understand the record, the court's rationale for denying plaintiff both a defense and indemnity with respect to Parcels A and G was that plaintiff had failed to show that it had any liability for the contamination of those sites. In respect of Parcels B through F, its rationale was that the owned-property exclusion of the policies relieved the carrier of both its defense and indemnification obligations. We are satisfied that the court, though partly correct in its analysis, was also, however, partly in error.
We begin our analysis with those critical factual propositions as to which the record on the summary judgment motion permits no genuine substantial dispute. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). First, irrespective of the contrary allegations made by Winko in its complaint against plaintiff, the investigative materials produced in discovery convincingly establish, as found by the trial court, that plaintiff had never had anything to do with Parcel A or Parcel G or any contamination found thereon and hence could not be held liable to Winko for any remediation costs it incurred in respect of those parcels. Second, the discovery materials convincingly establish, as also found by the trial judge, that no remediation of groundwater on Parcels B through F was ever ordered by DEP and, for that reason, although the presence of some low-level contamination had been found, that contamination never reached the minimum levels established by DEP for remediation. Third, the discovery materials further established, as found by the trial court, that Winko's primary remediation costs were incurred in the removal of contaminated soil, its replacement by clean fill, and the removal of buried drums and tanks containing contaminants.
These underlying factual propositions are, in our view, both fundamental and critical in defining the scope of defendants' defense and coverage obligations.
We address first the issue of plaintiff's right to a defense. It is now well settled that the insured's right to a *352 defense is, at least initially, determined by the allegations of the complaint against it, even if meritless or frivolous,[4] and that the insurer is obliged to provide a defense if the claims of damage are within the policy's covenant to pay, i.e., the coverage of the policy. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388-389, 267 A.2d 7 (1970); Hartford Ins. Group v. Marson Constr. Corp., 186 N.J.Super. 253, 257, 452 A.2d 473 (App.Div.1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983). There are, however, two exceptions to the so-called Burd rule. The insurer need not provide the defense at the outset if the allegations include claims that are not covered by the policy as well as claims that are covered or if the question of coverage is not, by its nature, capable of determination in the underlying action against the insured. In those situations, the insurer's obligation to defend becomes an obligation to reimburse for defense costs to the extent that the defense is later determined to have been attributable to the covered claims and, if coverage is not determinable in the underlying action, it is later determined that there was in fact coverage. See, e.g., Morton Int'l v. General Acc. Ins., 266 N.J.Super. 300, 340-341, 629 A.2d 895 (App.Div. 1991), aff'd, 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Universal-Rundle v. Commercial Ins., 319 N.J.Super. 223, 242, 725 A.2d 76 (App. Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999); Trustees of Princeton Univ. v. Aetna Cas. & Surety Co., 293 N.J.Super. 296, 301-305, 680 A.2d 783 (App.Div.1996), leave to appeal granted, 147 N.J. 574, 688 A.2d 1050 (1997); Rutgers v. Liberty Mut. Ins. Co., 277 N.J.Super. 571, 577-578, 649 A.2d 1362 (App.Div.1994).
Explanation of our conclusion that both the Burd exceptions are relevant here requires consideration of the coverage issues. All the policies here involved included the now familiar owned-property exclusion. There is no dispute that Parcels A and G did not come within that exclusion and hence were potentially subject to the coverage obligation. Nor is there any dispute that Parcels B and F came within the owned-property exclusion, at least in respect of soil contamination, since they had been rented to a corporation later merged into plaintiff corporation.
The issue, of course, is whether they also came within the now well-settled exception to that exclusion, namely liability of the owner based on contamination of the groundwater beneath the owned property. See Universal-Rundle v. Commercial Ins., supra, 319 N.J.Super. at 239, 725 A.2d 76. We acknowledge that the discovery materials showed that there was low-level contamination, that is, contamination below the minimum level set by DEP for water remediation. But since it is clear that no untreated groundwater is ever entirely pure, we are satisfied that DEP standards are the most reliable guide for determining whether contamination causing damage and therefore triggering coverage has occurred. If DEP determines that the level of contamination is so low that there is no need for water remediation, we are persuaded, absent any contrary evidence, that no damage to groundwater within the coverage has taken place. To be sure, the extent of the soil contamination on the owned parcels posed a threat of future contamination to the groundwater if not remediated. But the Supreme Court has made it clear that at least in respect of environmental risk insurance, the threat of harm, however imminent, does not constitute harm within the coverage. State v. Signo Trading Int'l., Inc., 130 N.J. 51, 63, 612 A.2d 932 (1992). Thus in order to prove the groundwater exception, we are satisfied that while the insured need not prove that a third party has already been actually damaged by contaminated water, he must nevertheless prove at least that *353 the water is actually contaminated to the point where it is likely to do so if not remediated. If DEP finds that no groundwater remediation is required as a matter of environmental protection, then the insured has necessarily failed to prove that he comes within the groundwater exception to the exclusion. We are aware that removal of contaminated soil may be a step in the process of groundwater remediation, see, e.g., Universal-Rundle, supra, 319 N.J.Super. at 240, 725 A.2d 76, but removal of contaminated soil only as remediation of soil contamination does not constitute groundwater remediation even if that soil removal will eliminate a threat of groundwater contamination.
Based on the foregoing, the covered/uncovered claim dichotomy vis-a-vis the defense obligation is clear. In analyzing the Winko complaint, it is evident that plaintiff was entitled to a defense of Winko's claim of contamination of Parcels A and G and its claim of groundwater contamination of Parcels B through F, but was not entitled to a defense of Winko's claim of soil contamination of Parcels B through F.
With respect to the second Burd exception determining the duty to defend, the insurers, as we understand it, have taken the position that while Winko's claims based on various types of contamination on various parcels were, by their nature, determinable in that underlying action, the fundamental coverage issue, namely whether the contamination constituted an "occurrence" within the policy was not determinable in the underlying Winko action. That assertion is correct. The question of whether a given contamination constitutes an occurrence within the intendment of the policy has been settled by Morton Int'l v. General Acc. Ins., supra, 134 N.J. at 86, 629 A.2d 831. The contamination will be deemed an occurrence unless the insured intended to cause environmental injury, intent to be objectively determined on a case-by-case inquiry into the circumstances of the contamination including
the duration of the discharges, whether the discharges occurred intentionally, negligently, or innocently, the quality of the insured's knowledge concerning the harmful propensities of the pollutants, whether regulatory authorities attempted to discourage or prevent the insured's conduct, and the existence of subjective knowledge concerning the possibility or likelihood of harm.
See also Universal-Rundle, supra, 319 N.J.Super. at 236, 725 A.2d 76.[5] Since the question of plaintiff's intent to cause environmental injury was neither pleaded in the Winko action nor relevant to its strict liability theory, it was patently not relevant to that action. Hence it was not determinable in that action although critical to defendants' assertion that none of the Winko claims were covered and therefore that it had neither a defense nor an indemnity obligation at all.
In terms, however, of the defense issue, we deem the issue of plaintiff's intent, whether for purposes of the pollution-exclusion clause or for purposes of the "occurrence" definition, to be now irrelevant. We reach that conclusion because as the facts of the matter turned out and as defendants themselves most vigorously assert, there was no groundwater contamination at all and no contamination of any kind by plaintiff in respect of the non-owned parcels. In this posture then and in respect of the potentially covered claims, since there was no contamination by plaintiff, it cannot have had a vitiating intent to contaminate because it did not contaminate at all. In short, what all this *354 amounts to is that Winko asserted meritless claims against plaintiff insofar as those claims asserted groundwater contamination of the owned parcels and contamination of any kind at all of the non-owned parcels. Consequently, as a matter of law, plaintiff has a right of reimbursement for its defense of those claims, and its total defense costs, which exceeded $400,000, must be allocated between the defense of those claims and the defense of the claims of soil contamination on the owned property, which clearly are not within the coverage and for which no defense obligation by defendants exists. This is simply the familiar situation in which, when covered and uncovered claims are alleged, the insurer must ultimately pay the cost of defending the covered claims.
With respect to the indemnification claims based on plaintiff's settlement with Winko, for the reasons we have already set forth, there can be no indemnification for that portion of the settlement allocable to the soil contamination claims. Had the underlying action been tried and Winko's claims against plaintiff for contamination of the non-owned parcels and groundwater contamination of the owned parcels been rejected by the trier of fact, then obviously no portion of any damages found by the fact-finder could have been attributed to those claims, and if the fact-finder had found actionable soil contamination of the owned property, all of the damages found by it would have been attributable to the non-covered claim. Consequently, plaintiff would have had no basis on which to seek indemnification.
The question then is whether the matter must be differently viewed when the insured settles, without express allocation, all claims against it, both covered and uncovered. We are satisfied that it must be. We start with the proposition that when an insured is sued and the insurer disclaims, either because both covered and uncovered claims are made against the insured or because the insurer elects, as is its right, to reserve for later coverage-action determination an issue determinative of coverage but not germane to the underlying action, the insured is left to fend for itself. The insured's purpose at that juncture is to conclude the underlying action at the most favorable terms it is able to negotiate. Concluding the action means, or at least it usually means, paying negotiated damages for all claims made against it, both covered and uncovered, and both meritless and having merit. And it may well be to its advantage to make a global settlement of the action that does not allocate a portion of the damages to each of the claims made against it. Indeed, we suspect that that is usually the case. We are also satisfied that meritless claims are included within an overall settlement not only because the insured must dispose of all claims against it but also in recognition of the nuisance value of meritless claims. Moreover, juries sometimes do strange thingsanother factor to consider in the making of the overall settlement. We are thus persuaded that even where, as here, the proofs may overwhelmingly demonstrate the lack of merit of particular claims included within the settlement, some portion of the settlement, even if minor, must fairly be attributed to them. Their ensuing qualification for indemnification by the insurer is, we are satisfied, a fair apportionment of the risks imposed on both insured and insurer when the insurer declines to provide a defense and thereby foregoes its right to control the defense and any settlement negotiations by which the underlying action is terminated.
We are aware of the apportionment formula mandated by the Supreme Court in Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 650 A.2d 974 (1994), where the consequence of the continuous trigger-theory is to allocate both defense and indemnification costs amongst all carriers on the risk in accordance with their respective exposure based on time the risk and degree of risk. See also Universal-Rundle, *355 supra, 319 N.J.Super. at 243-248, 725 A.2d 76. That apportionment must be made after allocation of the defense costs between the covered and uncovered claims and allocation of the settlement paid to Winko between uncovered claims and apparently meritless covered claims.
In summary, we hold that plaintiff is entitled to reimbursement of that portion of its total defense costs as shall be allocated by the trial court, on such proofs as it shall determine are appropriate and necessary, to plaintiff's defense of Winko's claims for damage to the non-owned parcels and groundwater contamination of the owned parcels. Plaintiff is also entitled to reimbursement for that portion of the total settlement with Winko as the trial court shall determine is reasonably attributable, under all the circumstances, to plaintiff's having to dispose by settlement of those claims as to which it was entitled to a defense even if those claims would likely have been decided against Winko by the fact-finder.
We affirm that portion of the summary judgments dismissing plaintiff's claims for a defense and indemnity as to those allegations of the underlying action asserting plaintiff's soil contamination of owned property. We reverse that portion of the summary judgments denying plaintiff's claims for defense and indemnity as to Winko's allegations asserting plaintiff's contamination of non-owned property and groundwater contamination of owned property, and as to those claims, we remand for further proceedings consistent with this opinion.
NOTES
[1] As a result of L. 1993, c. 139, ECRA was denominated the Industrial Site Recovery Act (ISRA), and a number of its provisions were amended. These changes are not, however, germane to the issues before us.
[2] The action had originally been brought in the Law Division, but was refiled in the federal district court because of its exclusive jurisdiction over CERCLA claims.
[3] We are aware that the complaint names eight carriers. Since five settled and two continued the action, one is left unaccounted for, and we are offered no explanation in that regard.
[4] Burd makes clear the scope of the insurer's defense obligation where the policy undertakes, as here, the defense of frivolous or meritless suits. 56 N.J. at 388, 267 A.2d 7.
[5] Defendants make no argument based on the so-called pollution-exclusion clause whose applicability, as the Court explained in Morton, 134 N.J. at 78, 629 A.2d 831, requires the insurer to show that the insured intentionally discharged a known pollutant. For the reasons set forth in the opinion, we have concluded that no question of plaintiff's intent, either to discharge a known pollutant or to cause environmental injury, is material to the defense/indemnity issue before us.