920 A.2d 754 (2007)
392 N.J. Super. 366
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, Plaintiff-Appellant/Cross-Respondent,
v.
Oscar VIZCAINO, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 2007.
Decided April 25, 2007.
Kathleen S. Murphy, Morristown, argued the cause for appellant/cross-respondent (Connell Foley, attorneys; Ms. Murphy, of counsel and on the brief).
Michael L. Dermody argued the cause for respondent/cross-appellant.
Before Judges SKILLMAN, LISA and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
Plaintiff, New Jersey Manufacturers Insurance Company (NJM), appeals by leave of court from an order requiring it to provide a defense to defendant Oscar Vizcaino, an NJM insured under a homeowner's policy, for all claims asserted against him in a pending personal injury action, including a claim that he intentionally assaulted the injured party.
The underlying personal injury action arises out of a physical altercation that occurred on April 9, 2004 in a bathroom near the bar at Basile's Italian Bistro in Monroe Township. The first count of the complaint alleges that Vizcaino, who was a patron, "intentionally, willfully and wantonly assaulted and struck" the plaintiff, Jeffrey Lunsford, another patron, causing him personal injuries. The second count alleges that Vizcaino "carelessly, recklessly and negligently assaulted and struck" Lunsford. The complaint also asserts negligence claims against Basile's Italian Bistro and a per quod claim on behalf of Lunsford's wife, Michelle.
Vizcaino requested NJM to provide him with a defense in the personal injury *755 action. NJM agreed to provide a defense to the negligence claim, but denied coverage with respect to the intentional assault claim. NJM's counsel sent Vizcaino a letter, which stated:
NJM does not provide coverage to anyone who intentionally causes bodily injury or property damage. NJM specifically reserves the right to disclaim coverage at a later date if it is determined that your conduct was intentional in nature. Additionally, if it is determined that your actions were intentional, NJM has no duty to indemnify you or pay any judgment rendered against you for your intentional acts.
The letter "strongly advised" Vizcaino to retain his own attorney to provide representation regarding "any non-covered claims."
Thereafter, NJM filed an action against Vizcaino for a declaratory judgment that it is not obligated to provide him with a defense against Lunsford's intentional assault claim. This declaratory judgment action was subsequently consolidated, "for discovery purposes only," with Lunsford's personal injury action.
NJM's obligation for Vizcaino's defense in the Lunsford action was brought before the trial court by cross-motions for summary judgment. The court ruled in an oral opinion that NJM has an obligation to provide Vizcaino with a defense to all claims asserted by Lunsford, including the intentional assault claim, until such time as the negligence claim is eliminated from the case. Accordingly, the court entered an amended order for partial summary judgment requiring NJM to provide a complete defense to Vizcaino in Lunsford's pending personal injury action. The order further provides that NJM's obligation to reimburse Vizcaino for the attorney's fees he previously had incurred in defending Lunsford's personal injury action and in the declaratory judgment action is to be determined after the trial of the Lunsford action.
We granted NJM's motion for leave to appeal from the part of the order that requires it to provide a defense to Vizcaino and subsequently granted Vizcaino's motion for leave to cross-appeal from the part of the order that defers any decision on his application for attorney's fees until after the trial of Lunsford's personal injury action.
The homeowner's policy that NJM issued to Vizcaino contained an exclusion from liability coverage for bodily injury "which is expected or intended" by the insured.[1] Thus, it is clear that if Lunsford's sole claim against Vizcaino was for intentional assault, NJM would have no obligation to provide Vizcaino with a defense. The question is whether the inclusion in Lunsford's complaint of a negligence claim obligates NJM to provide him with a defense, and if so, the nature of that obligation.
The leading case dealing with an insurance company's obligation to provide a defense to an insured against whom both intentional tort and negligence claims are asserted is Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 267 A.2d 7 (1970). Burd involved a shooting incident. The victim filed an action against the shooter, one count of which alleged that he had "maliciously and intentionally" fired the gun, and the other count of which alleged that he had negligently discharged the gun. The shooter requested his insurer to defend the action. The insurer refused on the ground that its policy excluded coverage *756 for bodily injury "intentionally caused" by the insured. As a result, the insured defended the action through his own counsel. A jury returned a general verdict against the insured that did not include a finding as to whether the shooting had been intentional or negligent. The insured then brought an action against the insurer for reimbursement of both the costs of defending the action and the judgment. The trial court held that because the insurer had refused to provide a defense in the underlying personal injury action, it was precluded from defending the coverage action on the ground that the shooting was intentional. Id. at 386-87, 267 A.2d 7.
The Supreme Court reversed and remanded for a determination whether the shooting was intentional, in which event the insurer would have no obligation to pay either the costs of defense or the judgment, or negligent, in which event the insurer would be required to pay all costs of the defense as well as the judgment. In reaching this conclusion, the Court's opinion by Chief Justice Weintraub stated:
The sense of the covenant is to defend suits involving claims which the carrier would have to pay if the claimant prevailed in the action. The covenant to defend is thus identified with the covenant to pay. That is the basis of the rule that ordinarily a carrier who defends unsuccessfully may not later deny coverage, absent an express agreement with the insured reserving a right to deny coverage. The obligation to defend "groundless, false or fraudulent" claims does not mean that the carrier will defend claims which would be beyond the covenant to pay if the claimant prevailed. It means only that a carrier may not refuse to defend a suit on the ground that the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment. . . .
Here the obligation to pay a judgment obtained by the injured party depended upon whether the injuries were intentionally inflicted within the meaning of the exclusionary clause. There may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interest. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense. That was the situation in the case at hand. Although both the insurer and the insured would want D'Agostino to fail, yet if D'Agostino should succeed, as it was likely he would, the insured would want the basis to be negligence whereas the carrier would profit if the basis was an intentional injury within the policy exclusion. If plaintiff pressed his claim of negligence, the coverage issue would remain open, for the carrier could hardly insist the injuries were intentionally inflicted. Willfulness is not a defense to a charge of negligence. And if plaintiff sought a judgment for intentional hurt, the carrier could not be expected to resist that basis of liability with the fervor or fidelity of an advocate selected by the insured.
In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. On the contrary the carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of course the insured expressly agrees to that reservation. This is not to free the carrier from its covenant to defend, but rather *757 to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay.
[Id. at 388-90, 267 A.2d 7 (citations omitted).]
As noted in Hartford Accident & Indemnity Co. v. Aetna Life & Casualty Insurance Co., 98 N.J. 18, 24 n. 3, 483 A.2d 402 (1984), if there is a factual question as to whether a policy provides coverage which cannot be decided before trial, "[t]he practical effect of Burd is that an insured must initially assume the costs of defense . . . subject to reimbursement by the insurer if [the insured] prevails on the coverage question." See also Rutgers v. Liberty Mut. Ins. Co., 277 N.J.Super. 571, 577-81, 649 A.2d 1362 (App.Div.1994).
However, the Court in Burd recognized that there are some cases in which it may be appropriate to determine the coverage question, and thus the insurer's duty to defend, in advance of the trial of the underlying personal injury action:
Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.
[56 N.J. at 391, 267 A.2d 7.]
This case is directly controlled by Burd. Lunsford's complaint against Vizcaino asserts a claim for intentional assault, for which the NJM policy concededly does not provide coverage. Under Burd, NJM was entitled to refuse to provide Vizcaino with a defense unless there was a determination in a declaratory judgment in advance of trial that the policy exclusion for intentional torts does not apply to Lunsford's claim.
NJM followed a somewhat different course. It offered to provide a defense to Vizcaino for Lunsford's negligence claim, but refused to provide a defense for his intentional assault claim. NJM's counsel indicated at oral argument before us that the defense it offered Vizcaino would include bearing any costs common to the defense of both the intentional tort and negligence claims, such as the costs of a defense medical examination and plaintiff's deposition. However, NJM's counsel indicated that there were other parts of Vizcaino's defense which it could not undertake for the reasons discussed in Burd, including the actual trial in the event the case does not settle.
It appears from the comments of NJM's counsel that NJM does not seek a declaratory judgment in advance of trial of the sort discussed in Burd that its policy does not provide coverage for Lunsford's claim. In any event, Vizcaino filed a counterclaim that sought an order requiring NJM to provide a complete defense to all aspects of Lunsford's personal injury action. The trial court granted this relief, and NJM's interlocutory appeal is from the order memorializing that ruling.
The trial court's imposition of an obligation upon NJM to provide a defense to Vizcaino for all of Lunsford's claims, including the intentional assault claim, is inconsistent with Burd. As in Burd, NJM and Vizcaino have a common interest in defeating Lunsford's claim, or if Lunsford establishes liability, minimizing the jury's award of damages. However, if Lunsford succeeds in establishing Vizcaino's liability, *758 "[Vizcaino] would want the basis to be negligence whereas [NJM] would profit if the basis was an intentional injury within the policy exclusion." Burd, supra, 56 N.J. at 390, 267 A.2d 7. Burd holds that:
In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. . . . This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay.

[Ibid. (emphasis added).]
Thus, the trial court order requiring NJM to assume responsibility for Vizcaino's defense even though NJM disputes coverage on the ground that Vizcaino's liability to Lunsford, if any, is for an intentional tort, is contrary to Burd.
In support of his argument that NJM is obligated to provide him with a defense to all of Lunsford's claims, Vizcaino relies upon Voorhees v. Preferred Mutual Insurance Co., 128 N.J. 165, 607 A.2d 1255 (1992). One major issue in Voorhees was whether a homeowner's policy providing coverage for bodily injuries covers liability for emotional distress accompanied by physical manifestation. Id. at 169, 607 A.2d 1255. The other major issue was whether an event causing emotional distress can be deemed an "accidental" occurrence entitling the insured to coverage when his or her actions, although intentional, were not intentionally injurious. Ibid. The Court answered both of these questions in the affirmative. Id. at 175-83, 607 A.2d 1255.
Obviously, neither of these major holdings in Voorhees involved the existence, or nature, of an insurer's duty to provide a defense to an insured in an action in which both intentional tort and negligence claims are asserted. Nevertheless, Vizcaino relies upon a sentence in an introductory section of the opinion, which states that "[w]hen multiple alternative[] causes of action are stated, the duty to defend will continue until every covered claim is eliminated[,]" id. at 174, 607 A.2d 1255, and is followed by a quotation to an opinion by the Seventh Circuit Court of Appeals, which stated:
To hold otherwise would be to place upon the insured the burden of demonstrating in advance of the underlying litigation which of the competing theories of recovery against it was applicable for purposes of insurance, thereby frustrating one of the basic purposes of such a clause in the insurance contract-protection of the insured from the expenses of litigation.
[Ibid. (quoting Solo Cup Co. v. Fed. Ins. Co., 619 F.2d 1178, 1185 (7th Cir.1980)).]
However, Voorhees did not involve an insurer's duty to defend a pending action; the only issue was whether the insurer had an obligation to reimburse its insured for costs she had incurred in defending an action concluded by a settlement. Once the Court held that the homeowner's policy involved in Voorhees provided coverage for a claim of emotional distress accompanied by physical manifestation and that an event causing emotional distress could be deemed an "accidental" occurrence even though the insured's actions were intentional, it followed that the insurer was obligated to reimburse its insured's defense costs because some of the claims asserted against her were covered by the policy and the settlement of the case for the nominal amount of $750 constituted in effect a decision in the insured's favor. As explained in Judge Baime's opinion for this court:
Based on the small amount of the settlement, [the insured] can fairly argue that [the claims asserted against her in the *759 underlying action], which encompassed both intentional and reckless or negligent conduct, were "wholly defeated." [Burd, supra, 56 N.J.] at 393, 267 A.2d 7. In that situation the insurer "may fairly be required to reimburse the insured for the cost of the successful defense even though the [insurer] would not have had to pay the judgment if the case had gone against the insured on a finding of intentional injury." [Ibid.]
[Voorhees v. Preferred Mut. Ins. Co., 246 N.J.Super. 564, 578, 588 A.2d 417 (App.Div.1991).]
Thus, the part of Voorhees upon which Vizcaino relies was dictum because it was not essential to the Court's decision. See Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 332, 66 A.2d 534 (1949).
Furthermore, the Court has reaffirmed Burd since Voorhees. In Morton International, Inc. v. General Accident Insurance Co. of America, 266 N.J.Super. 300, 340-45, 629 A.2d 895 (App.Div.1991), we rejected an argument by a defendant in environmental litigation that its insurance carrier had a duty to provide a defense because some of the allegations of the complaint were arguably within the policy's coverage. Our opinion quoted the same parts of Burd and Hartford Accident & Indemnity previously quoted in this opinion, and we concluded that the defendant was obligated to assume the costs of the defense itself, subject to later reimbursement if it prevailed on the coverage question. Id. at 344-45, 629 A.2d 895. The Supreme Court affirmed this part of our opinion, stating:
Finally, we reject Morton's contention that certain of its insurers breached their duty to defend its predecessors in the [DEP v.]Ventron, [182 N.J.Super 210, 440 A.2d 455 (1981)] litigation, asserting that the duty to defend is broader than the duty of indemnification, and observing that at least some of the allegations set forth in the Ventron complaint were within the policies' coverage obligations. The Appellate Division addressed those contentions, concluding that this Court's decisions in Hartford Accident & Indem., supra, 98 N.J. at 24-25, 483 A.2d 402 and Burd, supra, 56 N.J. at 388-90, 267 A.2d 7, were controlling and dispositive of Morton's contentions. We are fully in accord with the Appellate Division's determination of the duty-to-defend issue.
[Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am., 134 N.J. 1, 95, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994).]
Therefore, Burd continues to be the controlling authority with respect to an insurer's duty to defend an insured against whom both covered and non-covered claims are asserted. See also Trs. of Princeton Univ. v. Aetna Cas. & Sur. Co., 293 N.J.Super. 296, 301-07, 680 A.2d 783 (App.Div.1996); Muralo Co. v. Employers Ins. of Wausau, 334 N.J.Super. 282, 289-90, 759 A.2d 348 (App.Div.2000), certif. denied, 167 N.J. 632, 772 A.2d 934 (2001).
Vizcaino also relies upon L.C.S., t/a D'Jais Bar, Inc. v. Lexington Insurance Co., 371 N.J.Super. 482, 853 A.2d 974 (App.Div.2004), which arose out of an alleged assault upon a patron by a bouncer in a bar. The patron filed a complaint against the bar and bouncer for his personal injuries, which asserted both intentional assault claims against the bouncer and negligence claims against the bouncer and bar. The bar's insurance carrier refused to defend the action on the ground that the injured patron's claims all arose out of the alleged assault. As a result, the bar provided for its own defense and eventually settled the case for $25,000. The bar then brought an action against its insurance carrier for reimbursement of its defense costs and indemnification of the *760 $25,000 it had paid to settle the case. Id. at 487-88, 853 A.2d 974.
This court concluded that the patron's negligence claims against the bar were covered by the policy. Id. at 491-95, 853 A.2d 974. The panel also concluded, in the part of the opinion Vizcaino relies upon, that the insurance carrier had an obligation to defend the action even though it asserted both covered and non-covered claims, and that because the insurance carrier had refused to provide a defense, it was not entitled to a trial to determine whether plaintiff's claim was covered by the policy. Id. at 495-97, 853 A.2d 974. In reaching this conclusion, the court stated:
Following Voorhees, it is our holding in the instant case that if a claim is stated in two conflicting theories in a complaint for damages, one which requires coverage and the other which does not, the carrier must defend and may do so under reservation of rights.
. . . .
As in Voorhees, the [personal injury action] was settled. While [the insurer] may deem the amount excessive, it can hardly be heard on the issue since it declined to defend. Similarly, all of the proofs presented-the testimony of [plaintiff in the personal injury action] both at deposition and trial, the certification from trial counsel and the [personal injury action] settlement as reported on the record-indicate that settlement was based upon a negligence theory. While [the insurer] obviously disputes the issue, we state once again that it had its opportunity to participate in the defense of the action under reservation of rights but chose instead to disclaim and leave its insured to fend for itself. Accordingly, [the insurer] is not entitled to a hearing to re-litigate on the issue of whether [the plaintiff's] injuries were the proximate result of a negligent or intentional act.
[Id. at 497, 853 A.2d 974.]
The present case is distinguishable from L.C.S. because NJM has offered to provide a defense to the covered negligence claim. More broadly, however, we are unable to reconcile L.C.S.'s apparent holding that an insurer which refuses to defend an action presenting both covered and non-covered claims is foreclosed in a subsequent action by the insured for reimbursement of defense costs and the amount of the settlement from showing that the claim was not covered. Both Burd and Morton recognize that an insurer's right to a trial on the coverage issue is preserved if it refuses to defend a complaint asserting both covered and non-covered claims. Burd expressly holds that "[i]n such circumstances the carrier should not be estopped from disputing coverage because it refused to defend[,]" 56 N.J. at 390, 267 A.2d 7, and that "if the carrier does not defend the tort claim because a plaintiff's verdict will not resolve the coverage problem in the insured's favor or because the carrier cannot defend with complete fidelity to the insured's sole interest, then the carrier may be heard upon the coverage issue in a proceeding upon the policy[,]" id. at 394, 267 A.2d 7.
Vizcaino alleged in answers to interrogatories that he was assaulted by Lunsford and acted solely in self-defense. If the jury accepts this version of the incident, it presumably would return a verdict in Vizcaino's favor and NJM would then be obligated to reimburse him for all costs of his defense because the complaint asserts both covered and uncovered claims. Burd, supra, 56 N.J. at 393, 267 A.2d 7. But if the jury rejects Vizcaino's version of the incident and finds that he intentionally assaulted Lunsford, NJM would have no obligation to reimburse Vizcaino for any of *761 his defense costs. And if the jury returns a verdict in Lunsford's favor on the basis of negligence, NJM would have an obligation to reimburse Vizcaino for defense costs and the amount of the judgment. See id. at 394-96, 267 A.2d 7.
Accordingly, the order requiring NJM to provide Vizcaino with a defense to all the claims asserted by Lunsford is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion. This disposition of NJM's appeal moots Vizcaino's cross-appeal, which is therefore dismissed.
NOTES
[1] Although the NJM policy is not included in the record before us, Vizcaino acknowledges that his homeowner's policy contained this exclusion.